### A99A1141. VINCENT v. BUNCH et al.
(522 SE2d 495)

MILLER, Judge.

Charles Vincent sued attorney Gary Bunch and Gary Bunch, P.C. ("law firm") for fraud relating to a $10,000 check written to the law firm. Finding that the four-year statute of limitation had run, the trial court granted summary judgment to the defendants. Vincent appeals.

After sustaining catastrophic burns over 80 percent of his body, Vincent retained Bunch and the law firm to represent him in a personal injury lawsuit against Richards & Associates ("R & A"). On May 17, 1991, while the jury was deliberating, the parties reached a $250,000 settlement from which the law firm would receive $50,000.

Nearly immediately, Bunch's former wife, Wilma L. Bunch, sued Gary Bunch, Denise S. Bunch, the law firm, R & A, and Charles and Lola Vincent. She sought a temporary restraining order ("TRO") to prevent the disbursement of the settlement proceeds and requested that the funds be paid into the registry of the court. Wilma Bunch asserted that as of the May 30, 1991 hearing date, Gary Bunch owed an accrued arrearage of more than $100,000 for alimony, child support, attorney fees and post-judgment interest. At the hearing on the TRO, Gary Bunch represented the Vincents and himself, notwithstanding the court's stated concern that his interests and those of the Vincents might be adverse.

In opposing the TRO, Gary Bunch informed the court that the law firm

> has $20,000.00 or $15,000.00 worth of bills for the Vincents for instance. The law firm contracted with the experts. I didn't contract with the experts. The law firm has those obligations right now to pay the experts in the Vincents' case for instance. We had the deposition costs of the doctors, we had the costs of getting the exhibits, for instance.[1]

Bunch told the court that he was uncertain about the total fee and how much the Vincents needed to reimburse the firm. He stated "some discount" might be given, but "we've got a lot of bills that need

---

[1] Lola Vincent was present at this hearing, but Charles Vincent was not.

to be paid which the Vincents are kind of ultimately responsible for but we were contracting for them." Although the court refused to grant the TRO, it granted R & A's request that the entire $250,000 settlement be deposited into the registry of the court.

On June 10, the court released $137,500 to Vincent. Lola Vincent, his spouse, then paid the bills of several vendors directly. On August 12, an additional $12,626.48 was released to Charles Vincent from the settlement funds. Lola Vincent testified that they were then asked to make a payment of $10,000 to the law firm for costs incurred on their behalf. On August 14, 1991, Lola Vincent wrote a check payable to the law firm for $10,000.

Until June 1994, Bunch continued to act as Charles Vincent's attorney for various legal matters. But in August 1995, nearly four years after the issuance of the $10,000 check, Charles Vincent learned for the first time that Gary Bunch considered this check as a personal gift from the Vincents and not as payment to the law firm for legal expenses. A few months after that discovery, Vincent sued Bunch and the law firm for receiving money through false pretenses, for using the money for their own benefit, and for engaging in fraudulent conduct. Vincent alleged that Bunch and the law firm misled and deceived him and his wife that the $10,000 payment had been for litigation costs and expert fees.

On summary judgment, the parties offered conflicting evidence regarding the $10,000 check. Nevertheless, it is undisputed that this check was drawn on the Vincents' joint checking account and was made payable to "Gary Bunch, P.C." The endorsement on the back of the check recited: "FOR DEPOSIT ONLY GARY BUNCH, P.C. [account number]."

In a 1996 deposition, Gary Bunch averred that the $10,000 had been "purely a gift" from the Vincents and was not solicited. Bunch testified:

> Mrs. Vincent came to a — my home, when I wasn't home, and gave the check, that's Exhibit G, the ten thousand dollar ($10,000.00) check to Mrs. Bunch. She gave it to us unexpectedly. There was no coercion, no influence, no anything with regard to that. And the action was voluntary and unsolicited.

More than six years after she had written the check, at her deposition, Lola Vincent was unable to recall exactly what the payment had been for. Mrs. Vincent explained, "[t]hey kept the $50,000 in the court. Then we gave $10,000 for the bills." She testified, "[a]nd what [the $10,000] was for, who it was for, if it was for several people, I don't know. I just know we had to pay that much." She testified that

she thought the $10,000 was owed because she trusted Gary Bunch and there were "oodles and oodles of depositions," an expert witness in California, and photographs. She testified that she did not know how many people were owed and "[t]here was [sic] all sorts of bills coming in right and left." According to Lola Vincent, "[a]ll I know is I gave [Gary Bunch] a $10,000 check to pay bills. That's all I know."

In granting summary judgment, the trial court determined that the allegedly fraudulent act, the receipt and retention of the $10,000 check, occurred in August 1991. The court further found: "after writing the requested check to Defendants on August 14, 1991, to cover such expenses, Mrs. Vincent, on September 9, 1991, paid $2,938.00 to a Robert Johnson from California for his services as an expert in the case." The trial court concluded that Mrs. Vincent's direct payment to this expert, "after such obligation had been assumed by Defendants with the request for the $10,000 . . . reasonably should have put her on notice of an irregularity" but yet the lawsuit was not filed until January 8, 1996.[2] Finding no evidence that Vincent had been debarred or deterred by the defendants from bringing suit sooner, the court granted summary judgment.

1. Vincent contends that material issues of disputed fact precluded the grant of summary judgment. He claims that a jury must resolve whether the statute of limitation was tolled until his discovery of the fraud in August 1995.

Under certain circumstances, fraud can toll the statute of limitation, but it must be such as to prevent or deter the plaintiff from bringing suit. OCGA § 9-3-96; *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 457 (c) (504 SE2d 514) (1998); *Macomber v. First Union Nat. Bank*, 212 Ga. App. 57, 59 (2) (441 SE2d 276) (1994). Where the underlying complaint is actual fraud, the limitation period is tolled " 'until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence.' " (Footnote omitted.) *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847 (1) (507 SE2d 411) (1998).

When a confidential relationship exists, as here, such relationship lessens the plaintiff's obligation to discover the fraud and also heightens the duty of the defendant to disclose what should be revealed. *Frame*, 269 Ga. at 848 (1). In cases of a confidential relationship, silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as is an actual false representation. *Brown v. Brown*, 209 Ga. 620, 621 (6) (75 SE2d 13) (1953).

On summary judgment, the evidence and all reasonable infer-

---

[2] Lola Vincent is not a party to the underlying action. She filed for divorce in late 1992.

ences therefrom must be viewed in a light most favorable to the non-movant, here, Vincent. *Kendrick v. Funderburk*, 230 Ga. App. 860, 863 (1) (498 SE2d 147) (1998). When considered from that perspective, the evidence showed that on May 30, 1991, Gary Bunch represented to the superior court at the TRO hearing, in the presence of Lola Vincent, that the Vincents owed between $15,000 and $20,000 to the law firm for multiple bills incurred in the personal injury action. At that time, Lola Vincent had sole responsibility for the Vincents' finances including the payment of all bills. The agreement with the law firm required Vincent to reimburse or pay the out-of-pocket expenses associated with the litigation. After the court released part of the money in June, Lola Vincent wrote several checks totaling about $1,878.48 payable directly to six service providers. Later, on July 8, she wrote a $650 check to a medical expert.

Although Bunch contends that Lola Vincent's September 9, 1991 payment to an expert put Charles Vincent on notice as a matter of law concerning any alleged fraud involving the $10,000 check, we disagree. See *Fleming v. Lee Engineering &c. Co.*, 184 Ga. App. 275 (361 SE2d 258) (1987) (whether a cause of action is barred by statute of limitation is generally a mixed question of fact and law). When Lola Vincent wrote the $10,000 check in August, in light of Gary Bunch's representations to the court about the Vincents' indebtedness to the law firm for litigation expenses, a jury could find that Charles Vincent could reasonably have believed that a substantial amount of money remained owed to the law firm even had the $10,000 check been duly credited. In fact, Vincent offered evidence showing that when the $2,938 payment was made to a Mr. Johnson in September 1991, another expert was owed more than $5,281, an amount still not paid as of January 1996. Compare *Morris v. Atlanta Legal Aid Society*, 222 Ga. App. 62, 64 (1) (473 SE2d 501) (1996). Moreover, Bunch did not offer any billing documentation relating to Vincent's law firm account which would establish that Vincent should have realized that the $10,000 check had not been credited to the R & A litigation expenses amassed with the firm.

In these circumstances, a jury must determine whether Bunch and the law firm breached a duty to disclose that the $10,000 check was being treated as an unsolicited gift and not as payment on Vincent's account. *Green v. White*, 229 Ga. App. 776, 779 (1) (b) (494 SE2d 681) (1997) (relationship of trust imposes duty of complete disclosure). If the jury finds that the true use of the $10,000 check was fraudulently concealed, then the statute of limitation did not begin to run until Vincent discovered or could have reasonably discovered the fraud within the meaning of *Frame*, supra. See *Green*, 229 Ga. App. at 778-779 (1) (b). Because material issues of disputed fact remain unresolved, summary judgment was improper. *Arnall, Golden &*

*Gregory v. Health Svc. Centers*, 197 Ga. App. 791, 793 (2) (399 SE2d 565) (1990).

2. In light of our holding in Division 1, we need not reach the remaining enumeration of error.

*Judgment reversed. Pope, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 10, 1999 —
RECONSIDERATION DENIED OCTOBER 6, 1999 —

*Cabaniss & Adkins, George M. Cabaniss, Jr.*, for appellant.

*Hawkins & Parnell, H. Lane Young II, Thomas G. Tidwell, Anthony P. Tatum*, for appellees.

*Gary P. Bunch*, pro se.