A99A2281. NAJEM v. CLASSIC CADILLAC ATLANTA CORPORATION.
(527 SE2d 259)

ELDRIDGE, Judge.

Plaintiff-appellant George Y. Najem challenges the Fulton County State Court's grant of summary judgment to Classic Cadillac Atlanta Corporation. We affirm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to

specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

(Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In this case, Classic Cadillac successfully shifted the burden to Najem, who failed to present any evidence to support his claims.

The following undisputed facts show that Najem visited the showrooms of Classic Cadillac, a new and used car dealership, on April 10, 1997. Najem was accompanied by one of his adult sons. Najem test-drove a 1997 Cadillac Seville and decided to purchase one. Najem specifically wanted the "White Diamond" model of this car. However, because the particular style and color of this car were in demand, Classic Cadillac had only one 1997 STS White Diamond Cadillac Seville on its lot. Najem did not want that car because the mileage was too high and there was noise in the drivetrain. After a Classic Cadillac employee called around and located another 1997 STS White Diamond Cadillac Seville, Najem agreed to buy a car of that make and model for approximately $48,000. He paid deposits totaling $36,000 on the automobile, even though he had not seen or inspected any such car other than the one in the showroom. The buyer's order, which was signed by Najem, contained a clause whereby the buyer acknowledged that the delivered vehicle may have suffered some "transit and/or storage" damage and released the seller from any claims arising therefrom.

When the car was delivered to the dealership, Classic Cadillac drove the car to another location, installed a sunroof, and conducted a pre-delivery inspection and detail. On April 25, 1997, Najem, accompanied by his two sons, arrived at Classic Cadillac to pick up the car. However, he immediately reported that the floor mats were wet. He also complained because the car's odometer showed 65 miles and he wanted a car with less than 30 miles on it. After initially refusing to take delivery of the car, Najem changed his mind after Classic Cadillac agreed to install new floor mats. The registration and title documents, which were executed at delivery and signed by Najem, both identified this car as Vehicle Identification Number ("VIN") 1G6KY5295VU819423. In his deposition, Najem testified that he did not attempt to inspect the car further at the time of delivery, because there was not enough light available and "because we know, as my experience, when I buy [a] car, I never [have] any problem, never." Najem took the car home that night.

The next morning, Najem discovered a variety of cosmetic defects on the car, such as insufficient paint on the bumpers, a stain on the interior, and excess glue on the sunroof. He called Classic Cadillac and was instructed to bring the car in two days later. Najem's

son took the car to the dealership, where it was detailed and serviced under the warranty. His son picked up the car and took it home. However, when Najem saw the car, he found new scratch marks on the bumpers, paint in the trunk, and additional cosmetic problems. He became enraged at his son for not checking the car before picking it up from the dealership.

When Classic Cadillac's response to his new complaints did not satisfy him, he reported these problems directly to General Motors. General Motors referred him to another dealership, Capitol Cadillac. After inspecting the car, Capitol Cadillac offered to treat the problems under the warranty at no charge to Najem. However, Najem refused to allow Capitol Cadillac to work on the vehicle.

On May 15, 1997, Najem took the car back to Classic Cadillac for service; Najem was not charged for this work. When he picked up the car on May 16, 1997, Najem was still dissatisfied and wanted to return the car to Classic Cadillac for a refund. The owner of Classic Cadillac offered to repurchase the car, but Najem refused his offer because it was too low.

Najem then filed a pro se complaint on June 27, 1997, alleging that Classic Cadillac provided him with a vehicle with specific cosmetic defects. Classic Cadillac responded and moved to dismiss. Najem retained legal counsel, who filed an amended complaint on February 17, 1998, alleging, inter alia, breach of contract and fraud. Classic Cadillac filed a motion for summary judgment on August 7, 1998. The trial court granted the motion on October 20, 1998, and Najem appeals. *Held*:

1. In his first assertion, Najem contends that the trial court erred in granting summary judgment on his claim that Classic Cadillac breached its contract with him by delivering a different vehicle from that shown on the purchase order. This claim lacks merit.

In response to Najem's breach of contract claim, Classic Cadillac presented evidence to show that Najem agreed to purchase a 1997 STS White Diamond Cadillac Seville with low mileage, i.e., approximately 50 miles. The Classic Cadillac salesman drafted a purchase order for an automobile with a VIN of 1G6KY5297VU817821 ("ordered vehicle"). It is unclear from the record whether the ordered vehicle was the same vehicle that Najem rejected because of high mileage and noise problems ("showroom vehicle") or whether it was a separate vehicle. However, it is undisputed that the only available 1997 STS White Diamond Cadillac Seville that Najem looked at prior to delivery was the showroom vehicle. He did not inspect or evaluate another Seville prior to or after delivery.

A few days later, Classic Cadillac delivered to Najem a 1997 STS White Diamond Cadillac Seville ("delivered vehicle"). Najem did not inquire or inspect the car to determine if it had the same VIN as that

represented on the order form, nor did he complain that this was not the type, model, and make of the car that he ordered. In fact, he discovered that the VIN was different weeks later, only after he became dissatisfied with Classic Cadillac's service and urged his daughter to go over the sale documents because he wanted to "find something to catch these people." During his deposition, Najem acknowledged that the *only* differences between the two vehicles were the VIN and the minor cosmetic defects.

In response to Classic Cadillac's affirmative showing, Najem has failed to present any evidence to establish a jury issue as to whether Classic Cadillac failed to substantially comply with its agreement to provide Najem with a specific style, model, color, and year of automobile. OCGA § 13-4-20; *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 332 (1) (297 SE2d 222) (1982); see also *Lau's Corp. v. Haskins*, supra. Accordingly, the trial court did not err in granting summary judgment on this issue.

2. In his second assertion, Najem contends that the trial court erred in granting summary judgment on his fraud claims, which asserted that Classic Cadillac employees falsely represented that (a) the delivered vehicle was the same vehicle ordered by Najem; and (b) Classic Cadillac repaired the delivered vehicle.

The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort.

(Citations and punctuation omitted.) *Howard v. McFarland*, 237 Ga. App. 483-484 (1) (515 SE2d 629) (1999). See also OCGA § 51-6-2 (a). "In order to prove the element of justifiable reliance, the plaintiff must show that he exercised his duty of due diligence. [Cit.]" *Hanlon v. Thornton*, 218 Ga. App. 500, 501 (1) (462 SE2d 154) (1995). Further, an action for fraud cannot be sustained when based upon alleged misrepresentations which are "immaterial, not relied upon, or which the plaintiff in the exercise of reasonable diligence should have ascertained to be untrue." *Vaughan v. Oxenborg*, 105 Ga. App. 295, 299 (124 SE2d 436) (1962).

(a) There is no evidence to support the first fraud allegation. Najem presented no evidence of any statements or other representations by Classic Cadillac that the delivered car had the same VIN as that which appeared on the order form. As such, this case is distinguishable from that relied upon by Najem, *Evans Toyota v. Cronic*, 233 Ga. App. 318 (503 SE2d 358) (1998), in which employees of

defendant Evans Toyota intentionally made numerous fraudulent, material misrepresentations upon which the plaintiff relied.

In this case, the record clearly demonstrates that Najem agreed to buy a 1997 STS White Diamond Cadillac Seville and that Classic Cadillac delivered such car to Najem. Classic Cadillac employees made no representations regarding the VIN. Najem never inquired about the VIN of the delivered car and, in fact, admitted that he did not check the VIN at delivery. Najem accepted the car and drove it home. The only complaints expressed by Najem in the first several weeks involved the cosmetic defects. The issue of whether this car had the same VIN as on the order form simply did not arise until weeks later.

Further, since Najem admits that he has never seen the ordered vehicle and has no evidence regarding its condition, he is unable to show how he relied on any alleged misrepresentations that the delivered vehicle was the one he ordered or how he was damaged thereby. Therefore, Classic Cadillac successfully pierced Najem's pleadings as to this fraud claim, and summary judgment was appropriate.

(b) As to whether Classic Cadillac fraudulently misrepresented its repair of the car, Classic Cadillac presented several work orders demonstrating various services they provided for this car. Najem admitted that Classic Cadillac repaired the cosmetic defects, but that such repairs were not satisfactory. Therefore, the only remaining issue is not *whether* the services were performed, but the *adequacy* of such services.

On this issue, Najem asserts that the delivered vehicle should have been restored to the same condition as the ordered vehicle. However, there is nothing in the record to demonstrate the condition of the ordered vehicle or to show that such vehicle was ever discussed in relation to the condition of the delivered vehicle.

Further, Najem's repeated complaints about the work performed by Classic Cadillac demonstrate that he did not rely upon any representations regarding the quality of such work. As such, Najem's fraud claim cannot survive summary judgment on this issue. There was no error.

3. Pursuant to this Court's decision in Division 2, supra, Najem's remaining assertion is moot.

*Judgment affirmed. Blackburn, P. J., concurs. Barnes, J., concurs in judgment only.*

DECIDED DECEMBER 20, 1999.

*Drew, Eckl & Farnham, Deana L. Simon,* for appellant.

*Smith, Gambrell & Russell, Stephen M. Forte, Edward D. Burch, Jr.,* for appellee.