A02A2431. GOLDSTON v. BANK OF AMERICA CORPORATION et al.
(577 SE2d 864)

ELDRIDGE, Judge.

After consideration of "all the pleadings and briefs filed by the parties," the Superior Court of Fulton County dismissed the complaint of Lorrie Anne Goldston, née Zeigler, alleging a breach of fiduciary duty and fraud against the successor in interest to Fulton National Bank of Atlanta, defendant Bank of America Corporation ("Bank"), for its failure as trustee to comply with the terms of a trust established by Goldston's father for the benefit of Goldston and her brother. The superior court found that Goldston's complaint is time-barred by the ten-year statute of limitation applicable to claims of breach of fiduciary duty pursuant to OCGA § 9-3-27. Upon review, and for the reasons that follow, we reverse.

A motion to dismiss is an anomalistic vehicle by which to assert

an action as time-barred by a statute of limitation.[1] "A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under *any* state of facts *that could be proven* in support of his claim."[2] This is the posture in which the instant case comes to us.

With the above legal principle in mind, the facts contained in the pleadings, viewed to support respondent Goldston,[3] show that, on November 7, 1962, pursuant to a divorce action between Harold Zeigler and plaintiff Goldston's mother, Ida Zeigler, Harold Zeigler was ordered by the court to enter into an Agreement and Declaration of Trust transferring a piece of unimproved real estate bordering Peachtree Dunwoody Road ("Property") into an irrevocable and nonamendable trust for the purpose of benefitting Harold Zeigler's two minor children, appellant Goldston and her brother Scott Warren Zeigler ("children" or "child"), then ages thirteen and nine, respectively.[4] The Bank was named as trustee and was charged with holding, managing, investing, and reinvesting the trust property for the benefit of the children. The terms of the Zeigler trust gave the Bank the power and authority, inter alia, "For any purpose, to sell or exchange any or all of the corpus of the Trust Estate at public or private sale," with the proceeds thereof to be assets of the trust estate managed for the benefit of the children. The Bank, under the express terms of the trust, was to:

> keep full accounts and shall make annual reports to the [children], and upon the request of [either child] at any time shall give full information to such [child] as to the condition of the Trust Estate, the amounts received and disbursed.

Article 10 of the Zeigler trust agreement, expressed the intent that,

> the real property made the subject of this Trust be held by the Trustee, if possible, until such time as the property has reached maximum enhancement in value. This is not to unduly limit the Trustee in its power of sale hereunder but rather to express the clear intent of the order of the Court and to provide, if possible, that the property be held as the

---

[1] Generally, a motion for summary judgment is the appropriate vehicle by which to establish a running of the statute of limitation without defense therefor, because it is an evidentiary motion, and it must be shown that the statute of limitation was not tolled by any provision.

[2] (Citation and punctuation omitted; emphasis supplied.) *Nairon v. Land*, 242 Ga. App. 259 (529 SE2d 390) (2000).

[3] *Wright v. Swint*, 224 Ga. App. 417, 418-419 (480 SE2d 878) (1997).

[4] Scott Zeigler died prior to the filing of plaintiff's complaint.

City of Atlanta grows until maximum enhancement is reached.

In addition, the terms of the trust provide that,

> When the oldest of [the children] shall reach the age of twenty-one (21) years, the Trustee shall divide all the property and assets remaining in this Trust at that time into two equal shares. One such equal share shall be distributed in fee simple to such beneficiary as shall have reached the age, of twenty-one (21) years. But the Trustee shall continue to hold in trust the share of the other beneficiary until he or she shall reach the age of twenty-one (21) years, paying the net income therefrom to, or for the account of such child in the interim, and encroaching on the principal thereof as necessary for such child's proper support, health and education (including college).

Notably, the express terms of the Zeigler trust agreement contain no specific method by which such executory trust would terminate, except through the distribution of one-half of the corpus of the trust to each beneficiary at age 21.

In June 1964, less than two years after execution of the Zeigler trust agreement, the Bank transferred the Property to Harold Zeigler's new wife, Carolyn Zeigler, for less than fair market value. It is not disputed that the assets received from the transfer of the Property belonged to the children's trust estate.

From the pleadings, which the Bank concedes are "true" for purposes of the motion to dismiss, it appears that the Bank never dispersed assets from the Zeigler trust estate to anyone for support of the children during their minority, including for college; the Bank never made annual reports regarding the trust estate to anyone; the Bank never gave an accounting of the trust property to anyone; and the Bank never distributed a one-half portion of the assets of the trust to either child when each attained the age of 21. From the record before us, accepted as correct, it appears that the assets of the Zeigler trust estate remain with the Bank and, as stated in the complaint, the Bank "retained for their own use all funds derived from the transfer of the Property."

In 1996, Goldston's mother became incapacitated. Goldston settled her mother's affairs and, while doing so, discovered documents relating to her mother's divorce from Harold Zeigler which referenced the Zeigler trust. After investigating further, Goldston discovered the Zeigler trust agreement creating the irrevocable trust for her benefit and the benefit of her brother. Goldston asserts that, "The

beneficiaries were not aware of the trust's existence until early 1996, when Plaintiff discovered the documents relating to the trust among other documents relating to her mother's estate." The Bank does not dispute that Goldston, a minor at the time of the trust's creation, had no knowledge of the existence of the Zeigler trust created for her benefit; had no knowledge that the Bank was the trustee with a fiduciary duty toward her; had no knowledge that assets of the trust were to be distributed for her support during her minority, including for college; had no knowledge that one-half of the assets of the trust were to be distributed to her upon reaching age 21; and had no knowledge or notice of the Bank's breach of its fiduciary duty by failing to comply with the intent and terms of the Zeigler trust.

As a result of her discovery, Goldston filed suit against the Bank on November 5, 2001. The complaint alleged, inter alia, a breach of fiduciary duty and fraud. The Bank filed a motion to dismiss, claiming that, under the terms of the Zeigler trust, the last wrongful act that occurred was when the Bank failed to make a distribution to Goldston on March 7, 1970, when she reached age 21 and, thus, Goldston's 2001 complaint is time-barred by the ten-year statute of limitation for actions against fiduciaries.[5] In response, Goldston asserted that the statute of limitation was tolled by fraud in that the Bank failed to disclose to Goldston the existence of the trust; failed to disclose the assets of the trust; failed to disclose trust activity; failed to disclose that it did not comply with the terms of the trust; and failed to disclose that it converted the assets of the trust to its own use, thereby deterring her right of action. For reasons unexplained in its order and without addressing the issue of fraud, the superior court dismissed Goldston's complaint as time-barred. *Held*:

The Bank has raised a statute of limitation defense.[6] However, "[t]he sun never sets on fraud."[7] Therefore, our Code provides that,

[i]f [a] defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud.[8]

This Code section has been strictly construed to require "(1) actual fraud involving moral turpitude, or (2) a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confi-

---

[5] OCGA § 9-3-27.

[6] See, e.g., *Lutz v. CSX Transp.*, 208 Ga. App. 894 (432 SE2d 569) (1993).

[7] *Hill v. Fordham*, 186 Ga. App. 354, 358 (2) (367 SE2d 128) (1988).

[8] OCGA § 9-3-96; *Bahadori v. Nat. Union Fire Ins. Co.*, 270 Ga. 203, 205 (3) (507 SE2d 467) (1998).

dence."[9] In that regard, "[w]here a confidential relationship exists, [as here, such relationship lessens the plaintiff's obligation] to discover [the] fraud [and also heightens the] duty [of the] defendant to [disclose] what should be revealed."[10]

> In cases of [a] confidential relationship, silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as [is] an actual . . . false representation.[11]

Here, in this relationship between trustee and beneficiary, Goldston has alleged a claim of fraud based upon the actions of the Bank in (a) selling the Property for less than market value after only two years in the life of the trust, thereby violating the "the clear intent of the order of the Court . . . to provide, if possible, that the [Peachtree Dunwoody] property be held as the City of Atlanta grows until maximum enhancement is reached"; (b) selling the Property for less than market value, not to a disinterested third party, but back to the grantor Zeigler through his new wife, after Zeigler had been required by court order to put the Property in trust; (c) concealing the assets received through the sale of the Property by never informing Goldston of the trust's existence, never utilizing the assets of the trust for the children's support during their minority — including college, never accounting to anyone for the trust's assets, and never disbursing the corpus of the trust when the beneficiaries reached their majority; and (d) converting all of the assets of the trust for its own use. These alleged affirmative acts by the Bank, presumed true, clearly would have debarred or deterred Goldston from bringing an action to recover assets from a trust she was not made aware existed, although the Bank had a duty to disclose such existence to her. "[A] bank's own fraud which deterred or debarred the bringing of an action will toll the statute of limitation."[12]

Further, the Bank's reliance on cases such as *Allen v. Columbus Bank &c. Co.*[13] and *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*[14] is

---

[9] *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 846 (1) (507 SE2d 411) (1998).

[10] Id. at 848.

[11] (Punctuation omitted.) Id. at 848, n. 14; accord *Paul v. Destito*, 250 Ga. App. 631, 635, n. 5 (550 SE2d 739) (2001); *Rose v. Cain*, 247 Ga. App. 481, 483-484 (2) (544 SE2d 453) (2001); *Vincent v. Bunch*, 240 Ga. App. 255, 257 (1) (522 SE2d 495) (1999); *Beeson v. Crouch*, 227 Ga. App. 578, 582 (2) (490 SE2d 118) (1997); *Tigner v. Shearson-Lehman Hutton, Inc.*, 201 Ga. App. 713, 715 (411 SE2d 800) (1991); *Brown v. Brown*, 209 Ga. 620, 621 (6) (75 SE2d 13) (1953).

[12] (Citation omitted.) *Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343, 345 (245 SE2d 297) (1978).

[13] 244 Ga. App. 271 (534 SE2d 917) (2000).

[14] Supra at 844.

misplaced. In *Allen*, an action for mismanagement of a trust, the beneficiary was well aware of the trust's existence and had received benefits therefrom until the trust terminated and the remaining corpus was distributed; the evidence showed that the beneficiary had regularly received account statements and investment review statements from the trustee, and she admitted that she never read the statements.[15] Accordingly, and in contrast to the instant case, the beneficiary's fraud claim that the trustee withheld information which would have allowed her to discover her cause of action was obviously belied by the evidence.

*Hunter, Maclean, Exley & Dunn, P.C. v. Frame,*[16] too, is inapposite here. In *Hunter*, a legal malpractice action grounded in an alleged mishandling of a closing transaction, the Supreme Court of Georgia determined that the existence of a confidential relationship between a law firm and its client, alone, does not negate the client's burden to show actual fraud in order to toll the statute of limitation in a legal malpractice action. And in *Hunter* — as in *Allen* — there was absolutely no evidence by which a trier of fact could conclude that the defendant concealed information so as to show fraud; in *Hunter*, the client was well aware of the details of the closing, and he "admitted under oath that no member of the law firm had ever intentionally misrepresented any fact regarding the closing of the . . . transaction, and that he was not aware of any documentation that would support a claim of intentional misrepresentation."[17] This stands in contrast to the instant case wherein the Bank's alleged failure to disclose to Goldston the existence of the Zeigler trust, failure to issue statements, and failure to account for trust assets could support a finding of fraud.

Nor do we find persuasive those cases upon which the Bank relies that do not involve fraud during the course of a fiduciary relationship.[18] When a fiduciary relationship has been established, it is not necessary for a plaintiff to show some "affirmative act" involving moral turpitude, i.e., that some "trick or artifice," was employed to "prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information."[19]

---

[15] *Allen v. Columbus Bank &c. Co.*, supra at 272.

[16] Supra.

[17] Id. at 850 (2).

[18] *Kerce v. Bent Tree Corp.*, 166 Ga. App. 728, 729 (305 SE2d 462) (1983); *Comerford v. Hurley*, 154 Ga. App. 387, 388 (268 SE2d 358) (1980) ("*In the absence of any confidential relationship*, the type of fraud necessary to toll the statute of limitation is actual fraud, involving moral turpitude, which could not have been discovered by the exercise of ordinary diligence.") (citations omitted; emphasis supplied).

[19] (Citation and punctuation omitted.) *Kerce v. Bent Tree Corp.*, supra at 729.

Instead, a fiduciary relationship encompasses a *duty* to disclose so that "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud."[20] Moreover, the sale of the Property at below fair market value, less than two years after the creation of the trust, to the stepmother of the beneficiaries without their knowledge could be found to constitute an "affirmative act" involving moral turpitude and collusion in conflict of interest.

The Bank argues that, even if the statute of limitation was tolled by its failure to disclose the existence of the Zeigler trust to Goldston and to account for its assets, "the statute would have to have started running at least at the time the confidential relationship ended in March of 1970. Because [Goldston] was no longer a beneficiary of the Zeigler Trust after March 1970, it is simply not possible for the ten-year statute to be tolled long enough to permit [Goldston] to file suit in 2001." This argument is flawed in several respects.

First, it assumes that the Zeigler trust terminated at a time specific, i.e., when Goldston turned 21, regardless of the disposition of the trust's assets. But, the Zeigler trust, and consequently the Bank's fiduciary duty, was to terminate as to Goldston when she turned 21 *and* her share of the assets was distributed to her. As long as the Bank retained for its own use legal title to the assets that, under the terms of the trust, should have been disbursed to Goldston for her beneficial interest, an implied trust was created.[21] At best, due to the failure of the Zeigler trust[22] or, at worst, due to fraud.[23]

The Bank's argument is also flawed because it assumes that an ongoing fiduciary relationship is necessary in order for fraud to toll a statute of limitation; that, once a fiduciary relationship ends, the statute of limitation begins running as to a cause of action, regardless of a fraud that may have prevented its discovery. This is incorrect. The issue is the status of the relationship when the fraud occurred, e.g., "a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence."[24] The issue is not, as the Bank would have it, the status of the relationship when the fraud concealing a cause of action is finally discovered. So, regardless of the status of any *future* relationship between trustee and beneficiary, the statute of limitation as to a cause of action may be tolled due to fraud which occurred during a fiduciary relationship: "Where the fraudulent concealment is in breach of a confidential relation involving a duty to make full disclosure, the statute of limitation does not

---

[20] OCGA § 23-2-53.
[21] OCGA § 53-12-90.
[22] OCGA § 53-12-91 (1).
[23] OCGA § 53-12-93 (a); see also OCGA § 23-2-51 (b).
[24] *Hunter, Maclean, Exley &c. v. Frame*, supra at 846 (1).

begin to run until the discovery of the fraud."[25] This, despite the claim that the Bank's fiduciary relationship with Goldston ended 30 years ago.

Finally, we reject the Bank's contention that Goldston's complaint was properly dismissed because it failed to adequately plead fraud with "specificity" so as to toll the statute of limitation.

Granting a motion to dismiss a complaint based on the "particularity" of the pleadings would be inappropriate in this case. The proper remedy for seeking more particularity is by motion for a more definite statement, OCGA § 9-11-12 (e), at the pleading stage or by the rules of discovery thereafter.[26] Moreover, "a pleading involving a special matter (fraud, mistake, etc.) should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."[27]

We find that Goldston's complaint and amended complaint contain facts which, if proven, could show fraud sufficient to toll the statute of limitation. The pleadings assert the existence of a fiduciary relationship and set out the conduct of the Bank in withholding information relating to the Zeigler trust in violation of such relationship. "Concealment per se constitutes actual fraud where one party has the right to expect full communication of the facts from another."[28]

In addition, the pleadings allege the conduct of the Bank in failing to disburse the assets of the trust and retaining such "for their own use"; set out the omissions of the Bank so that Goldston would not be made aware of the existence of the trust; allege that "such conduct represents fraud"; allege "damages which the beneficiaries suffered as a result of [the Bank's] fraudulent conduct"; and allege that Goldston filed suit only after "learning of the existence of the trust" in 1996. It cannot be said on the record before us that Goldston could prove no set of facts in support of her pleadings which would toll the statute of limitation based upon a fraud which deterred her from bringing suit.

The Bank also claims that Goldston's pleadings fail to specifically establish scienter, i.e., that through the above acts, the Bank *intended* to conceal or deceive. However, when pleading fraud,

---

[25] (Citation and punctuation omitted.) *Arnall, Golden & Gregory v. Health Svc. Centers*, 197 Ga. App. 791, 793 (2) (399 SE2d 565) (1990).

[26] *Cochran v. McCollum*, 233 Ga. 104, 105 (210 SE2d 13) (1974); *Bryant v. Bryant*, 236 Ga. 265 (223 SE2d 662) (1976); compare *Torok v. Yost*, 194 Ga. App. 94 (1) (389 SE2d 793) (1989) (motion for more definite statement not necessary when motion to dismiss is not predicated on a failure to state claim but upon a failure to timely comply with an order of the court).

[27] *Torok v. Yost*, supra at 95 (1).

[28] (Citation and punctuation omitted.) *Holmes v. Drucker*, 201 Ga. App. 687, 688 (1) (411 SE2d 728) (1991).

"[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally,"[29] not specifically. This holds true because, "[e]xcept in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination."[30] Indeed, scienter deals with "a subjective state of mind seldom capable of direct proof."[31] In this case, from the acts specifically asserted in the pleadings and accepted as true for purposes of the instant motion to dismiss, it is possible to conclude that the Bank intended to conceal from the beneficiaries the fact that it sold the Property back to Harold Zeigler's new wife for less than fair market value and retained the money from the sale for its own use. Accordingly, the pleadings assert sufficient facts from which, if proved, scienter could be found by a trier of fact.

In sum, we conclude that the facts contained in the pleadings, assumed as true, demonstrate that the existence vel non of fraud remains an issue for jury determination which, if found, would estop the defendant from raising the statute of limitation defense.[32] Accordingly, granting the Bank's motion to dismiss was error.

*Judgment reversed and remanded. Smith, C. J., and Ellington, J., concur.*

DECIDED FEBRUARY 14, 2003.

*Slater, King & Gross, Scott R. King, Andrew N. Gross*, for appellant.

*Powell, Goldstein, Frazer & Murphy, William J. Linkous, Jr., David G. Ross, Nicole J. Wade, Heather E. Harper*, for appellees.

---

[29] OCGA § 9-11-9 (b).
[30] (Citation and punctuation omitted.) *Lloyd v. Kramer*, 233 Ga. App. 372, 373 (1) (503 SE2d 632) (1998).
[31] *Quill v. Newberry*, 238 Ga. App. 184, 189 (1) (c) (518 SE2d 189) (1999).
[32] *Vincent v. Bunch*, supra at 257-259.