A02A1663. BOAZ et al. v. LATSON.
(580 SE2d 572)

RUFFIN, Presiding Judge.

Darrell and Carolyn Boaz sued attorney William Latson for fraud, fraudulent foreclosure, and slander of title. Latson moved for summary judgment on all claims, and the trial court granted his motion. For reasons that follow, we affirm the trial court's ruling as to the fraud claim, but reverse as to the fraudulent foreclosure and slander of title claims.

We review the trial court's summary judgment ruling de novo, construing the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[1] So viewed, the evidence shows that, in 1994, Darrell Boaz retained Latson to represent him in a legal matter. On or about August 1, 1994, an individual named

---

Ronnie Street told Darrell that Latson needed Darrell's signature for an affidavit to be used in the legal proceeding. Street then presented Darrell with a piece of paper containing only a signature line and a blank notary public stamp. Darrell signed the paper and gave it to Street.

The Boazes allege that Latson used that signature to create a fraudulent $20,246.44 promissory note from Darrell to Latson that pledged as security property jointly owned by the Boazes ("the property"). According to the Boazes, Latson recorded the fraudulent note in Spalding County on March 9, 1995, even though Darrell owed him no debt. They contend that they did not learn about the note until 2001, when Latson sought payment and commenced foreclosure proceedings on the secured property. The Boazes also presented evidence that Latson failed to notify Carolyn Boaz about the foreclosure.

Latson testified by affidavit, disputing the fraud allegations. According to Latson,

> [Darrell] was unable to continue to fund [Latson's] representation of [Darrell] in pending criminal matters, and had outstanding sums due from past criminal and civil litigation. It was decided that in order to secure [Latson's] fees [Darrell would] execute[ ] a Deed to Secure Debt to induce [Latson] to continue his representation in the prolonged litigation. This document was presented to [Darrell] who was in complete agreement to executing same.

Latson further testified that the property description in the security deed "was obtained by Boaz from previous deeds and given to [Latson] for inclusion in the deed." Although Darrell Boaz purportedly signed the deed on August 1, 1994, Latson did not see Darrell sign it. Latson subsequently recorded the security deed on March 9, 1995.

Latson attached a copy of the security deed to his affidavit. The deed, which is dated August 1, 1994, provides: "Borrower [Darrell Boaz] is indebted to lender [Latson] in the sum of . . . $20,246.44 . . . evidenced by principal note signed by Borrower, dated this day, payable to Lender or order." The deed further states that it is "evidenced by a Note signed by Darrell L. Boaz and dated August 1, 1994."

The Boazes sued Latson on July 18, 2001, alleging that he fraudulently created the August 1, 1994 promissory note. They also asserted that the pending foreclosure proceedings were based on a nonexistent debt, that Latson failed to properly notify Carolyn Boaz of the foreclosure, and that Latson had slandered the title to their property by, among other things, publishing the foreclosure notice in

the newspaper. Less than one month after the Boazes filed suit, Latson foreclosed on the property.

Latson subsequently moved for summary judgment on various grounds. The trial court granted the motion, finding that the applicable statutes of limitation bar Darrell Boaz's claims and that no questions of fact remain as to Carolyn Boaz's claims because she was not involved in the allegedly fraudulent transaction on August 1, 1994.

1. *Fraud.* (a) The trial court did not err in finding that fraud's four-year statute of limitation precludes Darrell Boaz's fraud claim.[2] His allegations revolve around Latson's alleged activities in obtaining his signature on August 1, 1994, creating a fraudulent promissory note with that signature, and recording the note in March 1995. Each of these activities occurred well over four years before the Boazes filed their complaint in July 2001.

To avoid the statutory bar, Darrell argues that OCGA § 9-3-96 tolled the limitation period until he discovered the fraud in March 2001. Under OCGA § 9-3-96:

> If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud.

When the underlying cause of action is for actual fraud, "the limitation period [generally] is tolled until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence."[3] But where, as here, a confidential relationship exists, that relationship "lessens the plaintiff's obligation to discover the fraud and also heightens the duty of the defendant to disclose what should be revealed."[4]

Darrell argues that a factual question remains as to whether Latson prevented him from discovering the promissory note.[5] He further claims that he had no reason to know about the note before 2001. We disagree.

The Boazes offered evidence that Latson fabricated the promissory note. But they do not raise a similar claim regarding the August 1, 1994 security deed, and they do not dispute Latson's testimony that the deed "was presented to [Darrell]" and that Darrell provided

---

[2] See OCGA § 9-3-31; *Paul v. Destito,* 250 Ga. App. 631, 636 (2) (550 SE2d 739) (2001).

[3] (Punctuation omitted.) *Vincent,* supra at 257; see also *Hunter, Maclean, Exley & Dunn, P.C. v. Frame,* 269 Ga. 844, 847 (1) (507 SE2d 411) (1998).

[4] *Vincent,* supra; see also *Hunter, Maclean, Exley &c.,* supra at 847-848.

[5] See *Vincent,* supra at 258 (summary judgment inappropriate where factual issues remain as to tolling of limitation period under OCGA § 9-3-96).

information to be used in the deed's property description. At the summary judgment hearing, Latson noted without objection that the Boazes "never challenged the validity of the security instrument." Furthermore, they admitted in discovery responses that the *note* forms the basis of their fraud allegations.

The Boazes caution us on appeal not to be "sidetrack[ed]" by the security deed, when the "crux of [their] complaint is th[e] '[n]ote.'" But we cannot ignore the security deed. Even if the record lacks clear evidence that Darrell signed the deed,[6] Latson testified without contradiction that it was presented to Darrell at some point before March 9, 1995. Furthermore, the deed refers directly to the note and the $20,246.44 indebtedness, and it specifically states that Darrell executed a promissory note to Latson on August 1, 1994. Under these circumstances, Darrell should have known about the allegedly fraudulent promissory note and the attendant indebtedness prior to March 9, 1995, when he saw the security deed.

We recognize that, given his confidential relationship with Latson, Darrell had a "lessened duty . . . to discover [fraud that] should be discoverable through the exercise of ordinary care."[7] The record shows, however, that Darrell failed to meet even this lessened duty.[8] To conclude otherwise would impose on plaintiffs in a confidential relationship *no duty* to discover fraud.

In light of the security deed, no reasonable jury could find that Latson "debarred or deterred" Darrell Boaz from filing suit.[9] Accordingly, OCGA § 9-3-96 did not toll the limitation period on his fraud claim, and the trial court properly granted Latson summary judgment.

(b) Moreover, even if the security deed did not similarly put Carolyn Boaz on notice of the promissory note, the trial court properly granted Latson summary judgment on her fraud claim. "Fraud has five essential elements: (1) a false representation or omission of material fact; (2) scienter; (3) an intent to induce the party alleging fraud to act or refrain from acting; (4) justifiable reliance; and (5)

---

[6] Again, as noted above, the Boazes do not contend that the security deed is fraudulent.

[7] *Hunter, Maclean, Exley &c.*, supra at 848.

[8] See *Allen v. Columbus Bank &c. Co.*, 244 Ga. App. 271, 274 (1) (534 SE2d 917) (2000) (statute of limitation on trust beneficiary's fraud claim against trustee was not tolled by alleged fraud; even if income yields reported in letter from trustee to beneficiary were fraudulent, beneficiary could have discovered true yields by reading account statements provided by trustee); cf. *Vincent*, supra at 258 (factual question remained as to whether plaintiffs should have realized that their attorney was using their money for his own benefit, rather than for litigation expenses).

[9] OCGA § 9-3-96; see also *Vincent*, supra at 257 ("Under certain circumstances, fraud can toll the statute of limitation, but it must be such as to prevent or deter the plaintiff from bringing suit.").

damages."[10] We need not address each of these elements because the record undoubtedly fails to raise a factual question regarding reliance.

As Latson noted below, Carolyn did not participate in "the alleged [fraudulent] transactions between [Darrell] and [Latson]." She stated in discovery responses that she lacked "knowledge of the facts surrounding the alleged [n]ote." And she never asserted that she had a confidential relationship with Latson or that she relied on him in any way. Because the record contains no evidence that Carolyn relied on Latson, the trial court properly granted him summary judgment on this claim.[11]

(c) The Boazes argue that the trial court improperly entered summary judgment before the discovery period expired and without ruling on several outstanding motions. A defendant, however, may move for summary judgment "at any time."[12] If the record shows that no material issues of fact remain, judgment must be entered "forthwith."[13] Thus, the trial court "clearly had authority to entertain [Latson's] motion."[14]

Furthermore, although the Boazes contend that additional discovery would have produced new evidence regarding the promissory note, this claimed evidence does not involve the security deed or Carolyn Boaz's reliance allegations. Accordingly, the evidence would not preclude summary judgment.[15]

2. *"Fraudulent" or Wrongful Foreclosure.* The trial court, however, erred in granting Latson summary judgment on the fraudulent foreclosure allegations. In seeking summary judgment, Latson argued that no cause of action for fraudulent foreclosure exists under Georgia law; that Carolyn Boaz's claim fails because she was not involved in the allegedly fraudulent transaction on August 1, 1994; that the Boazes neglected to join party defendants; that the foreclosure proceedings were based on the security deed, rather than the allegedly fraudulent promissory note; and that the statute of limitation bars the claim. These arguments do not merit summary judgment.

---

[10] *Destito*, supra at 635 (1).

[11] See *Najem v. Classic Cadillac Atlanta Corp.*, 241 Ga. App. 661, 665 (2) (b) (527 SE2d 259) (1999) (physical precedent only) (summary judgment appropriate where fraud claimant fails to present evidence of reliance).

[12] OCGA § 9-11-56 (a).

[13] OCGA § 9-11-56 (c).

[14] *Garner v. Roberts*, 238 Ga. App. 738, 740 (1) (520 SE2d 255) (1999).

[15] See id.; see also *Quarterman v. Quarterman*, 268 Ga. 807, 808 (3) (493 SE2d 146) (1997) (court does not err in ruling on summary judgment motion before discovery expires where nonmoving party fails to show how additional discovery is relevant to motion).

(a) Georgia recognizes the tort of wrongful foreclosure. As we have noted, "[t]here exists a statutory duty . . . to exercise fairly and in good faith the power of sale in a deed to secure debt[, and] breach of this duty is a tort compensable at law."[16] The Boazes allege that Latson wrongfully commenced foreclosure proceedings based on a fraudulent debt and failed to comply with the foreclosure notice requirements. Their allegations state a claim for this tort.[17]

(b) We also reject Latson's argument that Carolyn Boaz has no claim because she did not participate in the allegedly fraudulent transaction. The record shows that Carolyn owned the secured property jointly with her husband and clearly had an interest in the foreclosure proceedings. Accordingly, she is a proper party to the wrongful foreclosure claim.[18]

(c) In their complaint, the Boazes named as defendants Susan Teresa Smith, the individual who notarized the allegedly fraudulent promissory note, and an "unknown witness" who signed the note. Apparently, these individuals were never served. Latson raised this lack of service on summary judgment, vaguely asserting that he was entitled to judgment on all claims because the Boazes neglected to join these parties. He clarifies his argument on appeal, explaining that Smith and the "unknown witness" are "necessary" and "indispensable" to the Boazes' allegations.

We fail to see how these defendants are indispensable to the Boazes' claim that Latson wrongfully foreclosed on their property. In fact, the trial court never found them to be indispensable. And, even if it had, an indispensable party objection is not a proper basis for summary judgment.[19]

(d) Latson also sought summary judgment because, in his view, "any alleged fraud . . . is irrelevant and immaterial to the foreclosure," which proceeded on the security deed, rather than the promissory note. By its terms, however, the security deed arose from the

---

[16] *Clark v. West*, 196 Ga. App. 456, 457 (b) (395 SE2d 884) (1990) (physical precedent only); see also OCGA § 23-2-114.

[17] See id.; *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 286 (2) (443 SE2d 837) (1994) (failure to provide proper notice of default constitutes a breach of duty under OCGA § 23-2-114); *Sale City &c. Co. v. Planters & Citizens Bank*, 107 Ga. App. 463, 465 (130 SE2d 518) (1963) (allegations that defendant advertised foreclosure sale before default stated claim for breach of duty to fairly exercise power of sale).

[18] See *Blanton v. Duru*, 247 Ga. App. 175, 177 (2) (543 SE2d 448) (2000) (trial court properly permitted plaintiff to assert wrongful foreclosure claim against ex-husband and individuals to whom ex-husband conveyed security deed in property he owned with plaintiff).

[19] See *Frady v. Irvin*, 245 Ga. 307, 312 (5) (264 SE2d 866) (1980) ("[I]t is not proper for a trial court to grant summary judgment against a plaintiff for failure to have joined an individual as an indispensable party in the same order in which the trial court adjudicates said individual to be indispensable. Rather, the proper procedure is to give the plaintiff an opportunity to join and to dismiss upon failure to do so.") (punctuation and emphasis omitted).

indebtedness allegedly established by the promissory note, and the deed's power of sale depended on default under the note. That note and indebtedness are relevant to the Boazes' claim that the foreclosure resulted from a nonexistent debt. Furthermore, Latson's argument does not address the Boazes' contention that he is liable to them for commencing foreclosure proceedings without proper notice to Carolyn Boaz.[20]

(e) In his summary judgment motion, Latson asserted that the statute of limitation bars *all* of the Boazes' claims because the allegedly fraudulent promissory note was signed in 1994 and recorded in 1995, more than four years before suit was filed. The trial court agreed.

Even if, as Latson asserts, a four-year limitation period applies to the wrongful foreclosure claim, summary judgment was not proper. The Boazes filed suit on July 18, 2001, seeking to halt the foreclosure proceedings that began earlier that year. And, although the record is not completely clear, it appears that Latson notified Darrell Boaz of the upcoming foreclosure sale just two days before they filed their complaint. Under these circumstances, we are perplexed by Latson's argument — and the trial court's finding — that the Boazes failed to timely file their wrongful foreclosure claim, which could not accrue until Latson allegedly breached the duty of good faith in the deed's power of sale.[21]

(f) On appeal, Latson argues that summary judgment on this claim was proper on grounds not raised below. As recently noted by our Supreme Court, "[e]ach party has a duty to present his best case on a motion for summary judgment."[22] Fairness to both the trial court and the parties requires "that legal issues be asserted in the trial court."[23] Thus, we need not — and will not — consider these arguments raised for the first time on appeal.[24]

---

[20] We express no opinion on the merits of this allegation. We merely note that Latson never addressed it in his summary judgment arguments.

[21] See *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251 (1) (569 SE2d 495) (2002) ("The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained his or her action to a successful result.") (punctuation omitted).

[22] *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002).

[23] Id. at 829.

[24] See id.; see also *Cox v. Edelson*, 243 Ga. App. 5, 7-8 (1) (530 SE2d 250) (2000) (summary judgment will not be affirmed as "right for any reason" based on argument never raised below); *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995) (summary judgment should not be granted on issue not raised in summary judgment motion unless " 'party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment' "); cf. *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001) (appellate court should determine whether summary judgment is right for reason raised in summary judgment motion, but not ruled on by trial court).

3. *Slander of Title*. In seeking summary judgment on the slander of title claim, Latson argued that he prepared and published all foreclosure notices in accordance with Georgia law. Apparently, he also included the slander claim in his general arguments regarding the statute of limitation, Carolyn Boaz's interest in the litigation, and indispensable party defendants. These arguments do not permit summary judgment.

(a) Under OCGA § 51-9-11, "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." This tort has four essential elements: "(1) publication of slanderous or libelous words; (2) that they were malicious; (3) that the plaintiff sustained special damages thereby; and (4) that the plaintiff possessed an estate in the property slandered or libeled."[25]

The Boazes allege that Latson slandered their title by, among other actions, wrongfully publishing a foreclosure notice based on a fraudulent note and debt. On summary judgment, Latson's only challenge to the merits of this claim was his vague — and unsupported — argument that a claim under OCGA § 51-9-11 cannot arise from a document prepared in accordance with statutory requirements.

We disagree. Although "this tort is subject to the privilege . . . accorded all regular pleadings filed in a court of competent jurisdiction,"[26] we have found no authority precluding a claim based on a published — and perhaps procedurally correct — foreclosure notice. Furthermore, case law reveals that title can be slandered through activities such as recording a plat and filing notice of a materialman's lien.[27] Accordingly, Latson was not entitled to summary judgment on this ground.

(b) A four-year limitation period controls the Boazes' slander to title claim, and "the right of action accrues . . . upon the doing of the act complained of."[28] Pretermitting whether all of the allegedly slanderous activities fall within the limitation period, the Boazes' assertion that Latson slandered them by publishing the foreclosure notice in 2001 certainly does. Accordingly, the trial court erred in finding this claim barred by the statute of limitation.

(c) As the property owner, Carolyn Boaz is a proper party to this claim.[29] Her lack of involvement in the August 1, 1994 transaction does not permit summary judgment. Furthermore, we cannot under-

---

[25] *Sanders v. Brown*, 257 Ga. App. 566, 567 (571 SE2d 532) (2002).

[26] (Punctuation omitted.) Id. at 568 (a); see also OCGA § 51-5-8.

[27] See *Sanders*, supra at 568-569; *F. S. Assoc. v. McMichael's Constr. Co.*, 197 Ga. App. 705, 708 (2) (399 SE2d 479) (1990).

[28] *King v. Miller*, 35 Ga. App. 427 (133 SE 302) (1926); see also OCGA § 9-3-30.

[29] See OCGA § 51-9-11.

stand why the unserved defendants — Susan Smith and the "unknown witness" — are indispensable to the slander claim or how their absence forms a basis for summary judgment.[30]

(d) Latson argues that summary judgment on this claim should be affirmed on grounds not raised before the trial court. As previously discussed, we will not consider these arguments.

*Judgment affirmed in part and reversed in part. Barnes, J., concurs. Adams, J., concurs in the judgment only.*

DECIDED MARCH 7, 2003 —
RECONSIDERATION DENIED APRIL 8, 2003 —

*Roberts Law Firm, John A. Roberts, Brandy C. Snyder*, for appellants.

*Albert B. Wallace, Stephen B. Wallace II*, for appellee.

*William R. Latson*, pro se.