### A98A1605. MORRIS v. STATE OF GEORGIA.
(507 SE2d 532)

POPE, Presiding Judge.
    The State filed a complaint under OCGA § 16-13-49 seeking forfeiture of $4,202 in currency seized at the time appellant Benjamin Bernard Morris was arrested for possession of 1.1 ounces of marijuana. Morris answered the complaint and filed a claim to the currency. After a bench trial, the court concluded that the currency seized was contraband under OCGA § 16-13-49 (d) (2) in that "it was used or intended for use to facilitate a transaction in or a purchase of or sale of a [sic] marijuana." The Court further found that the money qualified as contraband under OCGA § 16-13-49 (d) (6) in that it was in "close proximity" to the marijuana found in Morris's car. Morris appeals.
    "As forfeiture actions are civil proceedings, the State was required to prove its case by a preponderance of the evidence. . . . Upon appellate review, factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses. The clearly erroneous test is the same as the any evidence rule." (Citations and punctuation omitted.) *Salem v. State of Ga.*, 232 Ga. App. 886 (503 SE2d 62) (1998).
    The evidence presented at the hearing showed that two officers from the Piedmont-Northern Multi-Agency Narcotics Squad (MANS) received an informant's tip that a man in an older model gold sedan, with a personalized license plate reading "GOLDIE," was selling drugs at a housing project known as "Goose Hollow." The Goose Hollow area was known to authorities to be the site of an open-air drug market. When the officers went to Goose Hollow, they spotted a

---

[20] 202 Ga. App. 134 (413 SE2d 752) (1991).
[21] See *Heard*, supra.

sedan fitting the informant's description being driven by Morris. The officers saw the sedan circling the project, but they did not observe any drug-related activity. Shortly after they arrived at Goose Hollow, the sedan drove away and the officers followed in their own unmarked vehicle.

After a short time, Morris "whipped" the sedan into a driveway, and the officers pulled in behind, blocking the sedan's path. When the officers got out of their car and showed their badges, Morris ran behind a house, carrying a brown paper bag in his hands. When the officers caught up with Morris in a patch of kudzu behind the house, his hands were empty. Morris told the officers that he had run because he had a "little bit of weed" in his car. The officers then searched the car and located a bag holding 16 small bags containing a green leafy substance, which was later identified as approximately 1.1 ounces of marijuana.

The officers then called in the local K-9 patrol unit to conduct a search for the brown paper bag, resulting in the discovery of a roll of bills totaling $4,000 lying in the kudzu approximately ten feet from where the officers caught Morris. At the time of his arrest, Morris disclaimed any knowledge of the $4,000. This money, along with $202 recovered from Morris's pockets, is the subject of the forfeiture action.

One of the officers testified at the hearing based upon his experience of 150 to 200 drug-related arrests that the marijuana seized from Morris's car was packaged for re-sale and not for individual use. In the officer's opinion, the marijuana would sell for about $10-20 per package. The money located at the scene was in various denominations: one hundred twenty-nine $20 bills, ten $100 bills, fifteen $10 bills, four $5 bills and five $50 bills. The money found in Morris's pocket was similarly denominated: nine $20 bills, two $10 bills and two $1 bills. The officer relied upon this evidence in charging Morris with possession of marijuana with intent to distribute.

In his sole enumeration of error, Morris contends that the trial court applied the wrong subsection of OCGA § 16-13-49 in determining that the money was subject to forfeiture. Because this case involved less than four ounces of marijuana, Morris contends it is controlled by language found in OCGA § 16-13-49 (e), which provides, "A property interest shall not be subject to forfeiture under this Code section for a violation involving . . . four ounces of marijuana or less unless said property was used to facilitate a transaction in or a purchase or sale of a controlled substance or marijuana." Morris argues that the evidence in the case was legally insufficient under this provision because the State did not prove any actual transaction in marijuana took place.

Because this is a case involving less than four ounces of mari-

juana, Morris is correct that the quoted language of OCGA § 16-13-49 (e) applies. But he is incorrect in his assertion that the state must demonstrate that an actual transaction took place before the currency may be subject to forfeiture. "In a forfeiture action under OCGA § 16-13-49, the determination to be made by the finder of fact is not whether appellants possessed or used drugs, nor whether appellants were most likely engaged in selling drugs. The issue to be decided is whether the evidence presented by the state suffices to support a forfeiture under the relevant statute." (Citations and punctuation omitted.) *Salem v. State of Ga.*, 232 Ga. App. at 890. And this Court has held that "[w]hile the State does need to show a strong nexus between the property and the alleged violation if the amount of marijuana seized totals four ounces or less, the State can show this nexus in cases where an actual sale does not occur." *Rabern v. State of Ga.*, 221 Ga. App. 874, 877 (3) (473 SE2d 547) (1996).

In *Rabern*, this Court found that forfeiture of some portion of the appellant's real property was warranted even though no actual marijuana transaction occurred and less than four ounces of marijuana, in the form of 450 small marijuana plants, was confiscated, where the State established that the property was being used to facilitate the growth of the plants as part of a marijuana manufacturing operation. 221 Ga. App. at 877-878. As Judge Beasley explained in her special concurrence to the opinion, "[T]he property was in use as a nursery to produce the product which would constitute the object of [a] future sale or transaction; the real property 'was used to facilitate' the enterprise in this fashion. . . . The property subject to forfeiture, when small amounts of contraband are involved, must be in current or past use to facilitate a transaction, purchase, or sale which is current or past or intended for the future." *Rabern v. State*, 221 Ga. App. at 879 (Beasley, C. J., concurring specially).

In this case, although the State did not present evidence of an actual drug transaction, it showed a "strong nexus" between the $4,202 and drug activity. The MANS officers received an informant's tip that someone in a distinctive gold sedan was selling marijuana in the Goose Hollow area. The officers then discovered Morris driving the car described in a high drug activity area of the Goose Hollow project. Later, when they stopped to question Morris, he fled with a paper bag in his hand. When caught, he had nothing in his hands. A subsequent search turned up the $4,000, which Morris originally denied was his, but now claims as his property. The evidence showed that the marijuana confiscated was packaged individually, in a manner used for re-sale and not for private use, and the currency was in denominations corresponding to the street value of the individual packets. Although $4,000 of the money at issue was ultimately found some 150-200 feet away from the marijuana in Morris's car, the evi-

dence supported the trial judge's finding that the money originally had been in the car with the marijuana and was moved by Morris when he was fleeing the police. We believe this evidence is sufficient under OCGA § 16-13-49 (e). Compare *Rabern v. State of Ga.*, supra (evidence bore out informant's tip that property was being used to house marijuana manufacturing operation) with *Carr v. State of Ga.*, 212 Ga. App. 36 (441 SE2d 85) (1994) (where State failed to present any evidence that property owners were using marijuana other than for personal use), overruled in part, *Rabern v. State*, supra.

Under OCGA § 16-13-49 (s) (2), "[t]he fact that money . . . was found in proximity to contraband . . . authorizes the trier of fact to infer that the money . . . was the proceeds of conduct giving rise to the forfeiture or was used or intended to be used to facilitate such conduct." Contraband in this context includes all controlled substances, OCGA § 16-13-49 (d) (1), and the statute specifically includes marijuana in the definition of controlled substances. OCGA § 16-13-49 (a) (1).

The trial court, therefore, was entitled to infer that the currency represented the proceeds of one or more drug transactions and thus had been used "to facilitate a transaction in or purchase of or sale of a controlled substance or marijuana." See *Manley v. State of Ga.*, 217 Ga. App. 556, 558-559 (3) (458 SE2d 179) (1995). This inference is bolstered by the denominations and amount of the currency and the relatively small number of individual marijuana packets remaining in Morris's car.

Accordingly, we affirm the trial court's finding that forfeiture was warranted in this case. See *Holland v. State*, 232 Ga. App. 284, 285 (2) (501 SE2d 829) (1998) ("[I]t is well-established that a trial court's ruling will be affirmed if it is right for any reason.") (citations and punctuation omitted).

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

DECIDED OCTOBER 9, 1998 —

*James W. Smith*, for appellant.
*Robert W. Lavender, District Attorney, James D. Duffy, Assistant District Attorney*, for appellee.