A00A0256. STATE OF GEORGIA v. TUCKER.
(528 SE2d 523)

ELDRIDGE, Judge.

In this forfeiture action, the State appeals from the trial court's order entering judgment in favor of Clyde Douglas Tucker, Jr. Because the trial court's entry of judgment was error as a matter of fact and law, we reverse.

Based on information from a confidential informant ("CI"), Tucker's blue 1997 Chevrolet pickup truck, bearing Aultman Buick-Pontiac ("Aultman Pontiac") drive-out tags, was stopped by the Albany-Dougherty County Drug Unit. Patricia Aultman was driving, and Tucker was the passenger. The vehicle was searched. Approximately 59 grams of cocaine, as well as controlled substances in pill form, were found in a bait box in the back of the truck. A briefcase containing $4,010 in cash was located in the backseat of the truck's extended cab. Tucker was arrested.

The State filed a complaint seeking forfeiture of the $4,010 and the blue 1997 Chevrolet pickup truck. Answers were filed by both Tucker and Plantation Trace Chevrolet, Inc. ("Plantation Trace"), which claimed "innocent ownership" of the vehicle. An in rem forfeiture hearing was held. At that time, Tucker claimed that the search of his pickup truck was without probable cause and that the contraband found in it should be suppressed, in which case the State could not prove that the items sought to be forfeited were "in close proximity" to contraband or used "to facilitate" a violation of the Georgia Controlled Substances Act. OCGA § 16-13-49 (d) (2), (6); see *Pitts v. State of Ga.*, 207 Ga. App. 606 (428 SE2d 650) (1993). A lengthy evidentiary hearing was held on this issue, after which Tucker claimed that the search of his vehicle was without probable cause because "[t]he complete lack of information about the informant and the basis

of his knowledge relegated the information he supplied to the status of rumor."

After consideration of evidence and argument, the trial court entered an order suppressing the contraband based upon the following findings of fact and conclusions of law:

> Testimony of the witnesses at the hearing established that the justification for the stop was based solely upon the fact that the vehicle was displaying a temporary tag and that law enforcement had previously received information that an individual by the name of "Bo Tucker" was in route either to or from Panama City, Florida and would have drugs in his vehicle, that the vehicle was a blue Chevrolet Pickup Extended Cab bearing "Aultman" tags on the front and back, that there would be a female passenger in the vehicle and that there would be several different types of drugs including pills, and possibly marijuana. No testimony or other evidence was presented at the hearing relevant to the issue of the informant's basis for knowledge of the information relat[ed] to law enforcement. . . . [Thus,] the reliability of the information obtained by law enforcement and the specificity thereof were insufficient to provide . . . probable cause for a search and seizure of the vehicle.

*Held*:

1. In holding that the search of Tucker's vehicle was invalid, the trial court determined that "no other evidence" was presented at the hearing to establish the basis for the CI's information, except for the CI's description of the vehicle and its occupants. We find this determination to be error as a matter of fact.

(a) At the hearing, Investigator Fred Wood with the Albany-Dougherty County Drug Unit testified that the CI had been providing reliable information for at least four years. Wood testified that the CI had provided reliable information to other law enforcement agencies, as well: "This particular informant has given information in the past to myself as well as other law enforcement agencies in and around Albany, Dougherty County that have proved reliable based on arrest and confiscation of drugs, weapons, cash, and other items."

Wood testified that he had personally received information about controlled substances from the CI on at least four other occasions; that each time the information had proved correct; and that each time the information led to both arrest and conviction. Investigator Enfinger with the drug unit also testified at the hearing and stated that the CI had provided reliable information to him regarding a

large quantity of marijuana and a cache of automatic weapons. The CI's information led to arrest and conviction in that instance, as well.

Further evidence at the hearing showed that the CI "knew" Tucker. The CI had been in Tucker's house and had seen contraband there. The CI had provided information which aided in the previous arrest of Tucker in another county. Tucker's prior 1997 conviction in neighboring Colquitt County for possession of marijuana with intent to distribute was introduced and was before the trial court. Notably, defense counsel attempted to question Wood regarding other counties in which the CI provided information regarding Tucker; the trial court held an in camera meeting with Wood and Enfinger, after which the court refused to allow defense counsel to pursue the subject:

> [A]s a result of that discussion, I will not allow further questioning concerning the county in which the confidential informant, the county or counties in which the confidential informant has previously provided information that may have had a connection with this particular party, Mr. Tucker. As that information has a high probability of compromising the confidentiality and identity of the informant in this case.

The information acquired from the in camera meeting with the investigators was also before the trial court.

As to the incident in question, the evidence showed that the CI told Woods that Bo Tucker, a/k/a Clyde Douglas Tucker, Jr., had gone to Panama City, Florida, and that Tucker would be carrying several different types of drugs, including pills, when he reentered Dougherty County. The CI knew drugs by sight. And "there were pills seen." The CI told Woods that on the evening of November 8, 1998: "Bo Tucker would be in a blue Chevrolet pickup extended cab with Aultman Tags on the front and back and that there would be a female passenger, or a female with him, and that he would have drugs when he came back into Dougherty County." The arresting officer testified at the hearing that on the evening of November 8, 1998, drug unit officers saw a blue Chevrolet extended cab pickup truck with Aultman Pontiac tags on the front and back and occupied by a white male and a white female traveling north on Highway 91.

All of this "other evidence" was presented at the hearing and established the CI's reliability and basis of knowledge. The trial court's finding that, except for the CI's description of the vehicle and occupants, "no other evidence was presented" was error as a matter of fact.

(b) The trial court concluded that "the reliability of the informa-

tion obtained by law enforcement and the specificity thereof were insufficient to provide . . . probable cause for a search and seizure of the vehicle." Under the facts of this case, we find this conclusion to be error as a matter of law.

Probable cause to search may be provided by information from a reliable confidential informant. *Martin v. State*, 214 Ga. App. 388, 389 (448 SE2d 57) (1994).

> The sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. *A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.*

(Citations and punctuation omitted; emphasis supplied.) *Wells v. State*, 212 Ga. App. 60, 63 (2) (441 SE2d 460) (1994).[1] When the details of a tip are corroborated "by the personal observation of the investigating officers, a reliable informant's tip is sufficient to establish probable cause for a warrantless search." (Citation and punctuation omitted.) *DuPree v. State*, 232 Ga. App. 573, 574 (502 SE2d 511) (1998).

Here, the basis for the CI's knowledge was sufficiently established by the evidence presented at the hearing. The CI knew Tucker, had prior dealings with Tucker, had been in Tucker's home, and had "seen pills" in Tucker's possession just before providing the information to law enforcement. Deficiency, if any at all, in the basis for the CI's knowledge found more than adequate compensation in: (1) the informant's "previous record of reliability," which was well established by testimony from both Woods and Enfinger;[2] (2) the specificity of the CI's information, which included everything from Tucker's identity, to the direction Tucker's vehicle would be traveling, to the fact that the vehicle was an "extended cab" pickup with "Aultman" tags;[3] and (3) the personal observations of the arresting officer which — prior to the stop — corroborated *all* of the details given by the CI as to the vehicle's location, make, description, tags, and occupants.[4]

This evidence was sufficient to establish probable cause for a

---

[1] See also *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983).

[2] See *Britt v. State*, 208 Ga. App. 157, 158 (430 SE2d 28) (1993).

[3] See *Thomas v. State*, 208 Ga. App. 476, 477 (430 SE2d 849) (1993).

[4] See *McKinney v. State*, 184 Ga. App. 607 (1) (362 SE2d 65) (1987); *Britt v. State*, supra at 157-158; *Wells v. State*, supra.

search of Tucker's vehicle and the seizure of contraband found therein. *Wells v. State*, supra. The trial court's findings to the contrary were error as a matter of law.

(c) In rendering judgment on a complaint for forfeiture, the trial court is required to make mixed findings of fact and law, which this Court must accept unless they are clearly erroneous. See, e.g., *Mitchell v. State of Ga.*, 236 Ga. App. 335, 336 (511 SE2d 880) (1999). We find that the trial court's suppression of contraband in this case was clearly erroneous. Since the trial court entered judgment for Tucker based on the erroneous suppression of contraband, that judgment is reversed.

2. The State claims error in the trial court's finding that the $4,010 "was not in sufficient proximity to any contraband substances so as to support a forfeiture of said property." We must agree with the State, because the trial court's legal conclusion is without evidentiary support.

Under our forfeiture law, no person shall have a property right in: "moneys, negotiable instruments, securities, or other things of value which are found in close proximity to any controlled substance or marijuana or other property which is subject to forfeiture under this subsection." OCGA § 16-13-49 (d) (6). Further, a showing by the State that money is in close proximity to drugs is sufficient to establish a prima facie case in an action for condemnation of the money. *Moore v. State of Ga.*, 209 Ga. App. 89, 91 (432 SE2d 597) (1993); see OCGA § 16-13-49 (d) (6), (s) (2).

Here, the $4,010 was located in the cab of the pickup truck, and contraband was located in the bed of the same pickup truck. Tucker claimed ownership of both and stated that he had just "purchased the drugs from Kim Miller," thereby creating an additional nexus between the money and the contraband. This evidence factually established proximity close enough to warrant forfeiture of the money. OCGA § 16-13-49 (d) (6), (s) (2); *Morris v. State of Ga.*, 234 Ga. App. 683 (507 SE2d 532) (1998); *Manley v. State of Ga.*, 217 Ga. App. 556, 558 (458 SE2d 179) (1995).[5] Accordingly, the trial court's legal conclusion, unsupported by any evidence of record, was error.

3. The State also claims error in the trial court's determination that the blue 1997 Chevrolet pickup truck was not subject to forfeiture, since the owner of the pickup truck, Plantation Trace, was an "innocent owner" of the vehicle. The trial court found that "there is no

---

[5] Further, such evidence also supported a finding under OCGA § 16-13-49 (d) (2) that the $4,010 "was used or intended for use to facilitate a transaction in or a purchase of or sale of [contraband]." (Citation and punctuation omitted.) *Morris v. State of Ga.*, supra at 683. Apparently, the trial court did not consider forfeiture of the $4,010 pursuant to a violation of OCGA § 16-13-49 (d) (2), although such was pled by the State.

evidence of any knowledge on the part of that claimant [(Plantation Trace)] that said property was in proximity to any contraband substances so as to support a forfeiture of the vehicle."

> On appeal, the trial court's findings of fact will not be reversed unless clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses who appeared before it. This means that we will not disturb a trial court's findings if any evidence exists to support them.

(Citation omitted.) *Mitchell v. State of Ga.*, supra at 337.

Here, however, the trial court did not make any findings of fact in support of its legal conclusion that Plantation Trace had "no knowledge" of Tucker's conduct. Further, the court's legal conclusion is error as a matter of law, because lack of *actual* knowledge is not one of the criteria for "innocent ownership." Thus, the court did not apply (a) the facts of this case to (b) the applicable statutory criteria.

(a) The evidence showed that Plantation Trace is owned by appellee Tucker's father, Clyde Douglas Tucker, Sr. ("Tucker, Sr."). Tucker, Sr. signed the pleadings in this case as President of Plantation Trace. Appellee Tucker's mother is Linda Aultman Tucker, and her father — appellee Tucker's grandfather — owned and operated Aultman Pontiac. Tucker, Sr. originally went to work at Aultman Pontiac, and appellee Tucker started work there when he was "old enough to push a broom."

Tucker, Sr. is President of Plantation Trace, but he is also Vice President and General Manager of Aultman Pontiac. The two companies pass cars between them. Plantation Trace purchased the 1997 blue Chevrolet pickup in question and immediately sent it to Aultman Pontiac. Aultman Pontiac does all the detailing on Plantation Trace's cars. The two companies share dealer's tags and drive-out tags.

Plantation Trace did not seek the return of the pickup truck from Aultman Pontiac. Neither Aultman Pontiac nor Plantation Trace "missed" the pickup truck because it is common to loan out their vehicles. Appellee Tucker obtains loaner vehicles because he is "related to the principals." At the time of the incident, appellee Tucker had been driving the 1997 blue Chevrolet pickup truck with Aultman Pontiac drive-out tags for "a few months." In the court below, neither Aultman Pontiac nor Plantation Trace put forward any assertion or affirmative evidence that appellee Tucker did not have permission to drive the pickup truck.[6]

---

[6] In response to a question by the *trial court*, Tucker's uncle, James Golden, an

The evidence further showed that appellee Tucker has been involved with drugs in and around Dougherty County since 1984. In December 1997, less than a year before the instant case, appellee Tucker was apprehended attempting to purchase 29 pounds of marijuana in Colquitt County. He was driving a 1997 Chevrolet Blazer loaned to him by Aultman Pontiac with an Aultman Pontiac dealer tag on it. The Blazer had just been sold to Aultman Pontiac by Plantation Trace. To facilitate the purchase of the marijuana, Tucker was carrying $24,000 in cash in the Blazer. After the purchase had been completed, but before the marijuana could be put in the Blazer, the police moved in: "When Mr. Tucker purchased Marijuana, we didn't allow him to put it in his vehicle yet because we didn't want him to leave with, you know, that Marijuana and us, and us lose it."

The State filed a complaint for forfeiture against the $24,000 and the Blazer. In the prior Colquitt County action, Tucker, Sr. answered as Vice President and General Manager of Aultman Pontiac claiming "innocent ownership" of the vehicle under OCGA § 16-13-49 (e), just as he does in the instant case as President of Plantation Trace.

(b) A property interest will not be subject to forfeiture under OCGA § 16-13-49 if:

> the owner of such interest or interest holder establishes that the owner or interest holder: (1) Is not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know *and could not reasonably have known of the conduct or that it was likely to occur.*

(Emphasis supplied.) OCGA § 16-13-49 (e) (1).

Thus, Plantation Trace had the burden to show by a preponderance of the evidence that, with the exercise of ordinary care, it "could not reasonably have known of [Tucker's] conduct or that it was likely to occur." OCGA § 16-13-49 (e) (1). See *Mitchell v. State of Ga.,* supra at 336. This burden was not met. In fact, other than evidence of ownership of the vehicle, Plantation Trace offered no evidence to demonstrate that it could not reasonably have known of Tucker's conduct or

---

employee at Plantation Trace, testified that "as far as I know he didn't have permission to drive the truck." But Tucker's uncle also stated that he did not know what happened to the pickup truck when it got to Aultman Pontiac; that he lost track of it; and that it did not concern him. Tucker's uncle was not a principal in either company and testified that "I don't go to the meetings. I don't know who is who and what's what." Accordingly, his qualified statement that "as far as he knew" Tucker did not have permission to drive the pickup is not affirmative evidence of that fact. Tucker, Sr., who signed the pleadings as a principal in both car companies, did not testify at the hearing and never asserted that appellee Tucker did not have permission to drive the vehicle.

that it was likely to occur. The evidence is that Plantation Trace through Tucker, Sr. — as President of Plantation Trace and Vice President-General Manager of Aultman Pontiac — had knowledge of appellee Tucker's use of loaner vehicles from Aultman Pontiac and/or Plantation Trace and that Tucker had used such loaner vehicles to transport contraband.[7] Accordingly, Plantation Trace failed to show that it could not reasonably have known of Tucker's conduct or that it was likely to occur. "Innocent ownership" was claimed by Tucker, Sr. in the Colquitt County forfeiture action. While the results of that action are irrelevant here, the repeated claim of "innocent ownership" for the same type of offense, committed by the same defendant, with another loaner vehicle, from the same interrelated companies now rings hollow.

The State's evidence showed that the blue 1997 Chevrolet pickup truck was used to transport contraband and thus established a prima facie case for forfeiture. *Jackson v. State of Ga.*, 218 Ga. App. 437 (461 SE2d 594) (1995). The onus was then on Plantation Trace to establish its entitlement to a statutory exception under OCGA § 16-13-49 (e). Since that burden was not met, the vehicle is subject to forfeiture.

*Judgment reversed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 20, 2000 — 

*Kenneth B. Hodges III, District Attorney, Anthony L. Hing*, for appellant.

*Donaldson, Bell & Pickett, Reginald J. R. Bell, Jr., Mark L. Pickett*, for appellee.

---

[7] A corporation is chargeable with the composite knowledge acquired by its officers acting within the scope of their duties. See *Gem City Motors v. Minton*, 109 Ga. App. 842 (137 SE2d 522) (1964).