## A04A0573. GENERAL MOTORS ACCEPTANCE CORPORATION v. STATE OF GEORGIA.

### (602 SE2d 235)

BLACKBURN, Presiding Judge.

In this property forfeiture action, General Motors Acceptance Corporation ("GMAC") appeals the trial court's order forfeiting its interest in an automobile, contending that (1) the trial court applied an improper legal standard in determining whether GMAC was an innocent interest holder under OCGA § 16-13-49 (e), and (2) there was insufficient evidence to nullify GMAC's security interest in the automobile. For the reasons set forth below, we affirm.

The record shows that in October 2001, James W. Childrey purchased a 2002 Chevrolet Silverado pickup truck. Childrey financed his purchase with a loan from GMAC, which retained a security interest in the truck. The "Retail Installment Sale Contract" with Childrey gave GMAC the right to repossess the vehicle if Childrey "expose[d] the vehicle to misuse, seizure, or confiscation, or other involuntary transfer, even if the vehicle was not subject of judicial or administrative action."

In June 2002, the Fayette County Police obtained a search warrant and searched Childrey's home. During the search, the police located more than 800 grams of methamphetamine and approximately one pound of marijuana in Childrey's home and in another pickup truck belonging to Childrey (and financed by GMAC), which was parked in the driveway at the home near the Silverado truck. Both Childrey and his wife were arrested and charged in connection with the drugs found in the June search.

Following the June search, the police seized and sought forfeiture of two automobiles and a boat belonging to Childrey. Because of lack in equity in the trucks, the police did not, at that time, seize or seek forfeiture of either the truck in which the contraband was found or the Silverado truck. Instead, Agent David Neal of the Fayette County Drug Suppression Task Force made a telephone call to GMAC and

> advised them that Mr. Childrey was using vehicles that they were the lienholder on in the transporting and selling and use of illegal narcotics in the state of Georgia and that my whole reason for calling was to make them aware of the situation because of the innocent owner law. And I was advising them of what was going on with the vehicles that they owned. And I was also letting them know that if it happened again, if I was

to catch Mr. Childrey again, they would no longer be innocent owners.

Following the telephone call from Agent Neal, GMAC sent a field representative to the Childrey residence. The field representative spoke with Mrs. Childrey, who told him that the Chevrolet Silverado was being driven by an employee of a business owned by Childrey. She also confirmed that Mr. Childrey was still incarcerated due to the charges arising out of the June search. GMAC did not contact police to verify Childrey's incarceration, to confirm Agent Neal's authority, or to obtain a police report or any further information regarding the matter. Nor did GMAC seek to view or in any way inspect the vehicle. Nevertheless, GMAC believed that under its contract with Childrey and based on the information received, it had the right to repossess the Chevrolet Silverado as well as the other Childrey vehicles in which it held a security interest. GMAC decided to hold off doing so until its agent could find all of the vehicles parked at the Childrey residence at the same time and effect a mass repossession. This never occurred.

In March 2003, Childrey was arrested while driving the Chevrolet Silverado. Approximately a half pound of marijuana and over 150 grams of methamphetamine were found in the truck. The State filed a forfeiture action against the Chevrolet Silverado in April 2003. Childrey failed to answer the forfeiture action. GMAC answered the forfeiture action, asserting that it was an innocent interest holder. Following a bench trial, the court below rejected GMAC's innocent interest holder defense and granted the forfeiture.

"Forfeiture cases are civil proceedings, and the State need prove its case only by a preponderance of the evidence." *Davis v. State of Ga.*[1] "Once the State establishes a prima facie case, the burden shifts to the respondent to prove his status as an innocent owner by a preponderance of the evidence." Id. Forfeiture actions are tried by the court without the intervention of a jury.[2] "On appeal, the trial court's findings of fact will not be reversed unless clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses who appeared before it." *Mitchell v. State of Ga.*[3] "Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them." (Punctuation omitted.) *Lyon v. State of Ga.*[4]

---

[1] *Davis v. State of Ga.*, 256 Ga. App. 299, 304 (2) (568 SE2d 161) (2002).

[2] OCGA § 16-13-49 (o) (5), (p) (6).

[3] *Mitchell v. State of Ga.*, 236 Ga. App. 335, 337 (2) (511 SE2d 880) (1999).

[4] *Lyon v. State of Ga.*, 230 Ga. App. 264 (495 SE2d 899) (1998).

1. GMAC contends that the trial court applied an improper legal standard in determining whether GMAC was an innocent interest holder under OCGA § 16-13-49 (e). The trial court held that "[i]f an owner or interest holder has knowledge that their property may be used for an illegal purpose, the party must take reasonable steps, or in other words, exercise reasonable care, to protect its property." GMAC argues that OCGA § 16-13-49 does not create a duty on an informed interest holder to exercise reasonable care to prevent its property from being used illicitly under the statute.

The statute requires that an interest holder show that it "[i]s not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur."[5] GMAC's arguments regarding its actual knowledge of whether the Silverado was being used illegally ignore the consent element, which was the focus of the trial court's judgment. The trial court held that an interest holder who has been informed of possible misuse of the property has a duty to act reasonably in protecting its property from misuse; otherwise, the interest holder implicitly consents to the misuse of the property. The trial court thus adopted what other courts have described as "a broad definition of consent," under which an interest holder consents to illicit use of its property if it fails to take all reasonable steps to prevent the illicit use of the property once it acquires knowledge of that use. See *United States v. 16328 South 43rd East Ave.*[6]

"The intent of the General Assembly when it enacted OCGA § 16-13-49 was twofold: to protect the interest of innocent property owners and to provide for prompt disposition of contraband property." (Punctuation omitted.) *Dearing v. State of Ga.*[7] OCGA § 16-13-49 is to be liberally construed to effectuate its remedial purposes.[8] We hold that the trial court's test, which allows even an interest holder that has knowledge of the illicit use of its property to take advantage of the "innocent" interest holder defense by showing that it took reasonable measures to prevent such use, is a proper interpretation of the statute. The trial court did not apply an improper legal standard.

2. GMAC contends that the evidence was insufficient for forfeiture of its interest in the Silverado truck. GMAC argues that it "did not know and could not have reasonably known" that Childrey used or would use the Silverado truck to transport contraband. In its most basic form, GMAC's argument is that the phone call it received from

---

[5] OCGA § 16-13-49 (e) (1) (A).

[6] *United States v. 16328 South 43rd East Ave.*, 275 F3d 1281, 1285-1286 (10th Cir. 2002).

[7] *Dearing v. State of Ga.*, 243 Ga. App. 198, 202 (2) (532 SE2d 751) (2000).

[8] OCGA § 16-13-49 (z).

Agent Neal was insufficient to give it notice that Childrey would transport contraband in the Silverado.

We reject GMAC's contention that it could not have reasonably known that Childrey would use the Silverado to transport contraband. This Court has held that when law enforcement officials inform an automobile owner that an individual has used the automobile to facilitate drug sales, the owner will not be an "innocent" owner if that individual uses the automobile to facilitate drug sales in the future. *James v. State of Ga.*[9] This Court has also held that a corporation's knowledge that an individual has used one vehicle to transport contraband is sufficient to give the corporation notice that the individual is likely to use other vehicles to transport contraband. *State of Ga. v. Tucker.*[10] Here, Agent Neal specifically told GMAC "that Mr. Childrey was using vehicles that they were the lienholder on in the transporting and selling and use of illegal narcotics." Under the applicable "any evidence" standard, this was sufficient evidence to support the trial court's conclusion that GMAC "knew that the defendant vehicle could be used for the transportation of illegal drugs."

GMAC also contends that the trial court erred in finding that it did not take reasonable steps to prevent the illicit use of the Silverado. But ample evidence supported the trial court's finding. Alerted to a massive drug bust on Childrey's property, during which drugs in the residence and in another GMAC-financed truck (located only feet from the Silverado truck) were found, GMAC did nothing more than send an agent to talk to Childrey's accomplice spouse, who simply stated that the Silverado truck was being used in Childrey's siding business and that Childrey was still in jail. GMAC made no effort to contact police to obtain a police report, to confirm Agent Neal's authority, nor to obtain any further information from police regarding the drug bust. Even more surprisingly, GMAC did not even ask Childrey's wife if drugs were being transported in the Silverado truck, nor make any attempt to view or inspect the Silverado truck to ensure drugs were not being transported therein. The trial court had grounds for finding that these superficial actions were inadequate to investigate the matter and to prevent the illicit use of the vehicle.

Even without this additional information, GMAC determined that it had sufficient grounds to repossess all the GMAC-financed vehicles, including the Silverado truck, on the basis that Childrey was exposing the vehicles to misuse, seizure, or confiscation. But

---

[9] *James v. State of Ga.*, 240 Ga. App. 288 (523 SE2d 354) (1999).
[10] *State of Ga. v. Tucker*, 242 Ga. App. 3 (528 SE2d 523) (2000).

GMAC made a business decision to hold off executing the repossession until all the vehicles were parked simultaneously at Childrey's residence, apparently so that a repossession could take place in one convenient fell swoop. The trial court had grounds to find that this business decision of convenience was unreasonable, since one or all of the vehicles could continue to be used to transport drugs in the meantime.

Accordingly, evidence sustained the trial court's finding that GMAC did not take reasonable steps to protect its interest or to prevent the illicit use of the vehicles. As an appellate court, we are bound to sustain findings of fact by the trial court when there is any evidence to support them. See *Lyon*, supra. We accordingly have no choice but to affirm the judgment of the trial court below.

*Judgment affirmed. Andrews, P. J., Eldridge, Mikell and Adams, JJ., concur. Ruffin, P. J., concurs specially. Barnes, J., dissents.*

RUFFIN, Presiding Judge, concurring specially.

Forfeiture proceedings are necessarily harsh. Although I suspect the legislature had good intentions in enacting criminal forfeiture proceedings, this case presents yet another example of how good intentions translate into government overreaching.

Basic rights continue to be eroded in the government's fight to combat illegal drug use. While such a fight is laudable, the weapons used are sometimes intolerable and alien to a free society. GMAC, long a reputable presence in the business community, is now — like other financial institutions — saddled with the nontraditional burden of ascertaining whether a consumer is lawfully using vehicles, which GMAC simply finances. It is an unnecessarily harsh result, and I believe the legislature should revisit this statutory scheme.

Nevertheless, given the current law, I agree with the result reached by the majority. The dissent's analysis hinges upon distinguishing a lien holder from a family member "owner" of a vehicle. But OCGA § 16-13-49 (e) (1) expressly applies to the owner of a property interest and to mere "interest holder[s]." In other words, the legislature has determined that a lien holder such as GMAC is subject to the same standard as an actual owner. " 'When a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it but must construe it according to its terms.' "[11] Given the plain language of the statute at issue, I am constrained to find that GMAC should be treated no differently than any other property owner, and thus I concur with the majority.

---

[11] *State v. Villella*, 266 Ga. App. 499, 501 (597 SE2d 563) (2004).

BARNES, Judge, dissenting.

Because I cannot agree that the law authorizes this result, I must respectfully dissent. In my view, the trial court erred in its legal analysis, and we owe the trial court no deference to that ruling. On mixed questions of fact and law, an appellate court accepts the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently applies the law to the facts. *Morrow v. State*, 272 Ga. 691, 693 (1) (532 SE2d 78) (2000).

Applying this standard of review, I find that the trial court placed on GMAC an impermissible burden that is not recognized by our law. The result of the trial court's reasoning is to "deputize" lien holders as de facto police officers, and once a police authority, apparently no matter how informally, notifies a lien holder that the police believe that the company should exercise its right to repossess a vehicle, the company's only safe recourse is to do so. I cannot agree with that proposition.

Under the facts of this case, I do not believe that anyone seriously questions that GMAC was an innocent interest holder under OCGA § 16-13-49 (e); thus, in my view, the question presented is whether the State can change that status based on a mere telephone call telling them that GMAC should do what the State, with equal or greater knowledge, refused to do.

I find that *State of Ga. v. Tucker*, 242 Ga. App. 3 (528 SE2d 523) (2000), and the other nonlien holder cases on which the majority, the State, and the trial court rely, do not apply in this circumstance. For example, the auto dealer in *Tucker* was an owner, not an interest holder, and thus had a greater right to control the pickup because the truck was its own property. Moreover, it is obvious from the evidence recited in *Tucker*, that Tucker was a family member of the supposedly innocent owners of the truck. As family members, they undoubtedly knew of Tucker's criminal history with drug offenses, and apparently knew this information before allowing Tucker to take possession of the truck. Further, because they were the truck's owners, they could merely refuse to allow Tucker to use the truck and would not face legal consequences for doing so, even if they did so wrongly.

Here, no evidence shows that at the time it acquired its security interest in the truck GMAC had any knowledge, or that it could have reasonably known, that Childrey would later use the truck for purposes which made the vehicles subject to seizure. Further, contrary to the potential liability of an owner, GMAC, as only the holder of a security interest, could expect to be sued for wrongful repossession if it repossessed the vehicles and it was later determined for some reason that the repossession was not authorized.

> [A] wrongful repossession occurs when the repossession is accompanied by an act that is in contravention of some legal duty owed to the party from whose possession the vehicle is being taken. In the context of a wrongful repossession, a wrongful act means any act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right. When the term wrongful is used as an element of this tort, it is used in its more comprehensive sense to include that conduct which is in contravention of some legal duty owed to the party from whose possession the vehicle is being taken.

(Punctuation and footnotes omitted.) *Corbin v. Regions Bank*, 258 Ga. App. 490, 492 (1) (574 SE2d 616) (2002). In any event, I question whether GMAC would be authorized to repossess the truck under the information made known to it by the police officer. This was only a telephone call. The was not a request from the district attorney. Further, even though the officer said that he would follow up with a letter, this was not done. Also, this is not a case in which GMAC did nothing. It investigated, found that Childrey was in jail, and that this pickup was being used allegedly by an employee in Childrey's business. More persuasively, with the same information available to it, the State refused to seize the vehicle. Thus, if GMAC had repossessed the truck based solely on the telephone call and its investigation and if Childrey sued for wrongful repossession, it would not be impossible for a jury to decide that the repossession was wrongful.

Moreover, I am not certain that GMAC could lawfully repossess the vehicles under the circumstances existing in this case. From the evidence introduced at trial, all of the vehicles were involved in drug possession for which the State executed its search warrant in June 2002. Thus, a repossession would have been contrary to the interests of the State.

> "All property declared to be forfeited under OCGA § 16-13-49 vests in this state at the time of commission of the conduct giving rise to forfeiture together with the proceeds of the property after that time." OCGA § 16-13-49 (t) (1). In other words, when property is subject to forfeiture for violation of the law, title vests absolutely in the government on the date of the illegal act. Seizure and a subsequent decree of forfeiture merely confirms the forfeiture that has already taken place.

(Citations and punctuation omitted.) *English v. State*, 202 Ga. App. 751, 753 (2) (415 SE2d 659) (1992). Thus, if GMAC had repossessed

the truck, the State could have asserted an interest in the proceeds. Additionally, the procedures adopted by the State and ratified by the trial court and the majority are contrary to the State's interest in forfeiture actions. Even though an economic interest has certainly arisen in these cases, the State's "interest is only to prevent a guilty party from further misusing the property." (Citation omitted.) *State of Ga. v. Sewell*, 155 Ga. App. 734, 735 (2) (272 SE2d 514) (1980); *Hallman v. State of Ga.*, 141 Ga. App. 527, 528 (2) (233 SE2d 839) (1977). In this case, the State's inaction, apparently while attempting to eliminate GMAC's innocent holder defense, allowed Childrey to continue to misuse the truck. Also, these procedures are contrary to the two legislative purposes of promptly disposing of property subject to forfeiture under the statute and protecting the property interests of innocent owners, as defined by the statute. *State of Ga. v. Jackson*, 197 Ga. App. 619, 621 (1) (399 SE2d 88) (1990). This record clearly shows that the police officer subverted the statute's real goals to one of economic interest only. This subversion is demonstrated by the officer's testimony that the reason that the State did not seize the other vehicles was that no equity was involved because too much money was owed on them, and his sole reason for calling GMAC was to make them aware of the situation so as to prejudice their status as an innocent owner. Further, the police seized another vehicle because "[i]t was very favorable for the sheriff's office to pay . . . off" the small lien on the car.

Under these circumstances, as I believe the trial court's judgment should be reversed, I must respectfully dissent.

DECIDED JULY 13, 2004 —

*Sutherland, Asbill & Brennan, Valerie S. Sanders, William D. Barwick, Thomas M. Byrne, McCullough & Payne, John G. McCullough*, for appellant.

*Andrew T. Jones, Gary D. Bergman, Assistant District Attorneys*, for appellee.