S04G1945. GENERAL MOTORS ACCEPTANCE CORPORATION v. STATE OF GEORGIA.

(613 SE2d 641)

THOMPSON, Justice.

In *Gen. Motors Acceptance Corp. v. State of Ga.*, 268 Ga. App. 473 (602 SE2d 235) (2004), a majority of the Court of Appeals held that General Motors Acceptance Corporation (GMAC) was not an innocent interest holder in a Chevrolet Silverado truck in which it held a

security interest, and that, therefore, GMAC's interest in the vehicle was subject to forfeiture by the State under OCGA § 16-13-49 (e) (1) (A).[1] Because we conclude that the Court of Appeals erroneously applied an improper legal standard in reaching that determination, we reverse.

James Childrey purchased a 2002 Chevrolet Silverado truck on credit. The dealer assigned the retail installment contract to GMAC, which obtained a first priority security interest in the vehicle. In June 2002, Childrey and his wife were arrested after the Fayette County Drug Suppression Task Force searched their home and vehicles and recovered approximately two pounds of methamphetamine and one pound of marijuana in another vehicle owned by Childrey. The State seized a boat and two other automobiles in which Childrey had significant equity. The Silverado was parked near the residence; no contraband was found inside, and the agents declined to seize it after learning that Childrey had no equity in the vehicle.

Several days later, task force Agent David Neal telephoned a GMAC representative and informed him of Childrey's arrest.[2] Agent Neal also advised GMAC that Childrey was using other GMAC-financed vehicles for the transportation and sale of illegal narcotics, and should Childrey be caught again, GMAC would no longer be considered an innocent interest holder with respect to those vehicles. Agent Neal also told GMAC that the task force did not have cause to seize the other vehicles, but he requested that GMAC repossess them.[3] Because the only information that GMAC had at that point was Agent Neal's statement that Childrey was selling drugs, GMAC was concerned that it had insufficient documentation to support repossession of the vehicles, and it asked for written confirmation. Agent Neal replied that he would have law enforcement send a letter to that effect; but despite the agent's assurances, no written confirmation was ever provided. Nonetheless, GMAC undertook its own investigation by sending a field representative to inspect the Childrey property and to interview Mrs. Childrey. She informed the GMAC representative that her husband was presently incarcerated on drug charges and that the Silverado was being used by an

---

[1] OCGA § 16-13-49 (e) (1) provides:
A property interest shall not be subject to forfeiture under this Code section if the owner of such interest or interest holder establishes that the owner or interest holder: (A) Is not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur.

[2] Agent Neal mistakenly informed GMAC that the vehicle in which the contraband was discovered was a GMAC-financed vehicle. This information later proved to be untrue.

[3] Agent Neal made that request even though he was informed by GMAC that payments on the vehicle were current.

employee of their siding business. The vehicle was not seen on the premises at the time and GMAC independently verified the fact that Mr. Childrey remained incarcerated. Although GMAC's financing contract with Childrey permitted repossession of a vehicle which is "expose[d] . . . to misuse, seizure or confiscation," it is the company's policy to require concrete facts before effecting a repossession. Based on his observations, his interview with Mrs. Childrey, and independent verification, the field representative determined that there was no "concrete evidence" to authorize a repossession.

GMAC had no further contact with the State authorities until March 2003, when Agent Neal telephoned GMAC to advise the company that Childrey had been arrested again on drug charges, and on this occasion, he was driving the Silverado.

The State filed a complaint for forfeiture against the Silverado, naming Childrey and GMAC as owners and/or interest holders in the property. GMAC filed an answer maintaining an innocent interest holder defense under OCGA § 16-13-49 (e).[4] After a hearing, the trial court granted forfeiture of the vehicle to the State. The Court of Appeals affirmed. *GMAC*, supra.

"In a condemnation action, once the State has presented a prima facie case for forfeiture, the claimant has the burden of establishing by a preponderance of the evidence that [it] is an innocent owner." *Mitchell v. State of Ga.*, 236 Ga. App. 335, 337 (511 SE2d 880) (1999). See also OCGA § 16-13-49 (o) (5) and (p). The State's evidence at the hearing showed that the Silverado was used to transport contraband, and thus established a prima facie case for forfeiture. The burden was then on GMAC to establish its entitlement to a statutory exception under OCGA § 16-13-49 (e). The relevant provisions of that statute provide that a property interest will not be subject to forfeiture if the owner or interest holder establishes by a preponderance of the evidence that it is "not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur." OCGA § 16-13-49 (e) (1) (A). Only the last prong of that Code section is relevant to our inquiry here.[5]

The State concedes that, prior to March 2003, GMAC did not acquire firsthand knowledge that Childrey was using a GMAC-financed vehicle in connection with illegal drug activity. The telephone call in 2002 from an agent unknown to GMAC conveyed

---

[4] James Childrey did not answer the complaint, and his interest in the vehicle was forfeited by operation of OCGA § 16-13-49 (o) (4).

[5] There is no allegation by the State that the other requirements of OCGA § 16-13-49 (e) as set forth in subsections (e) (1) (B) through (e) (1) (E), were not met by GMAC.

nothing more than a mere suspicion of future illegal activity. GMAC reasonably requested written confirmation of those unsubstantiated claims, which was never provided. There was no further communication from the authorities until almost a year later when Childrey was arrested in the Silverado and the vehicle was seized by the State. In the meantime, GMAC conducted its own on-site inspection of the Childrey property. The trial court and the Court of Appeals found that investigation lacking, in that GMAC failed to "contact police to obtain a police report, to confirm Agent Neal's authority, [or] to obtain any further information from police" to substantiate Childrey's 2002 arrest. *GMAC*, supra at 476. In this regard, the Court of Appeals characterized GMAC's actions as "superficial" and its investigation "inadequate . . . to prevent the illicit use of the vehicle." Id.

As noted above, in order to retain its status as an innocent interest holder under OCGA § 16-13-49 (e) (1) (A), GMAC must establish that it "did not know and could not reasonably have known of [Childrey's] conduct or that it was likely to occur." According to the Court of Appeals, the 2002 phone call from Agent Neal provided GMAC with the requisite knowledge that Childrey would likely use the Silverado for illegal purposes. That holding reduces the quantum of knowledge sufficient for an interest holder to lose statutory protection to mere suspicion. Such an interpretation of the knowledge requirement does not accurately express the intent of the legislature in enacting the forfeiture provisions: "one of the express purposes of OCGA § 16-13-49 [is] the protection of the property interests of innocent owners." *Ford v. State of Ga.*, 271 Ga. 162, 163 (516 SE2d 778) (1999). And because forfeiture of property is disfavored, the statutory scheme must be "strictly construed and limited." *Pabey v. State of Ga.*, 262 Ga. App. 272, 277 (585 SE2d 200) (2003).

Presumably, the State could have instituted forfeiture proceedings when it found the Silverado in close proximity to the contraband on Childrey's property. See OCGA § 16-13-49 (d) (6); *Manley v. State of Ga.*, 217 Ga. App. 556 (3) (458 SE2d 179) (1995). It declined to do so. Instead, it placed the onus on GMAC to repossess the vehicle based on allegations on which the State refused to act. Lienholders have only contractual rights, strictly governed by statute, to exercise remedies upon default, and are subject to legal challenge in the form of wrongful repossession or foreclosure. See generally *Boaz v. Latson*, 260 Ga. App. 752 (2) (a) (580 SE2d 572) (2003), rev'd on other grounds in *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004). To hold under these facts that GMAC acquired knowledge that Childrey would use the vehicle in a manner giving rise to its forfeiture misconstrues the intent of the statute and undermines the rights of innocent lienholders. Compare *State of Ga. v. Tucker*, 242 Ga. App. 3 (528 SE2d 523) (2000) and *James v. State of Ga.*, 240 Ga. App. 288 (523 SE2d 354)

(1999) (both involving family member owners who had prior first-hand knowledge that the forfeited vehicles were involved in illegal drug activity). It follows that the Court of Appeals interpreted the reasonable knowledge prong of OCGA § 16-13-49 (e) (1) (A) in a manner which exceeds the duty imposed by the legislature. In so doing, that court applied an improper legal standard.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

SEARS, Presiding Justice, concurring.

I agree with the majority opinion and concur in its judgment. I write simply to highlight the unfairness of the State's position in this case. At the time that Agent Neal telephoned GMAC and told GMAC that it should repossess the vehicle, the State could have subjected the vehicle to forfeiture if it could have shown that the vehicle was "directly or indirectly" "intended for use in any manner to facilitate a [controlled substance] violation."[6] Agent Neal informed GMAC that the State did not have enough evidence to seize the vehicle under the foregoing standard. However, the State now asserts that, based on what Agent Neal told GMAC, GMAC at that time had enough evidence so that it "reasonably should have known" that the vehicle would be used for a controlled substance violation or that such a violation "was likely to occur."[7] The State relies on this assertion in its attempt to defeat GMAC's interest in the property. However, if the State did not believe that it could have shown that the vehicle, even indirectly, was intended for use in any manner to facilitate a controlled substance violation, it is highly unfair for the State to assert that GMAC "reasonably should have known" that the vehicle would be used for that purpose. I do not rely on this lack of equity in the State's position to join the majority opinion. Instead, I fully concur with the majority's reasoning and with its conclusion that GMAC established that it was entitled to its status as an innocent interest holder under OCGA § 16-13-49 (e) (1) (A).

CARLEY, Justice, dissenting.

In this automobile forfeiture action, General Motors Acceptance Corporation (GMAC) asserted that it was an innocent interest holder under OCGA § 16-13-49 (e) (1) (A). However, the trial court rejected that defense and granted the forfeiture. On appeal, the Court of Appeals affirmed the trial court. *Gen. Motors Acceptance Corp. v. State of Ga.*, 268 Ga. App. 473 (602 SE2d 235) (2004). Today, however, a majority of this Court reverses, "conclud[ing] that the Court of

---

[6] OCGA § 16-13-49 (d) (3).
[7] OCGA § 16-13-49 (e) (1) (A).

Appeals erroneously applied an improper legal standard in reaching [its] determination . . . ." P. 329. I submit that, in affirming the trial court, the Court of Appeals correctly applied the proper legal standard, and that this Court, rather than the Court of Appeals, errs in its disposition of this forfeiture proceeding.

The applicable legal standard has never been in question. OCGA § 16-13-49 (e) (1) (A) unambiguously provides that

> [a] property interest shall not be subject to forfeiture under this Code section if the owner of such interest or interest holder establishes that the owner or interest holder . . . [i]s not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur. . . .

Despite the majority's intimation to the contrary, the Court of Appeals clearly analyzed this case in accordance with that standard. *GMAC v. State of Ga.*, supra at 475 (1) (quoting the text of OCGA § 16-13-49 (e) (1) (A)). Accordingly, the majority mischaracterizes the basis of its reversal as the erroneous application by the Court of Appeals of an improper legal standard in affirming the trial court. Instead, the majority's fundamental disagreement is with the finding by the trial court, which was affirmed by the Court of Appeals, that GMAC failed to meet the evidentiary burden of proving its innocent interest holder defense under OCGA § 16-13-49 (e) (1) (A). Once the dispositive issue in this appeal is properly identified as evidentiary sufficiency, rather than application of the appropriate legal principle, the fallacy in the majority's analysis becomes readily apparent.

The Court of Appeals correctly notes:

> "Once the State establishes a prima facie case, the burden shifts to the respondent to prove his status as an innocent owner by a preponderance of the evidence." [Cit.] Forfeiture actions are tried by the court without the intervention of a jury. [Cits.] "On appeal, the trial court's findings of fact will not be reversed unless clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses who appeared before it." [Cit.] "Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them." [Cit.]

*GMAC v. State of Ga.*, supra at 474. The majority acknowledges that the State of Georgia showed that Childrey used the Silverado truck to transport contraband, and thus shifted the burden to GMAC to prove

its innocent interest holder defense. "The question of preponderance of the evidence is a matter resting with the trier of facts and where the trier finds either way, it will not be set aside on appeal if there is any evidence to support the finding. [Cits.]" *Guye v. Home Indem. Co.*, 241 Ga. 213, 218 (244 SE2d 864) (1978) (reversing the Court of Appeals for *failing* to apply the any evidence standard when reviewing a finding of fact). Therefore, the trial court's finding that GMAC failed to prove its defense by a preponderance of the evidence must be affirmed unless the evidence demanded a contrary finding.

Under OCGA § 16-13-49 (e) (1) (A), GMAC's lack of actual knowledge that the Silverado truck was subject to forfeiture, standing alone, is not sufficient to show that it was an innocent interest holder. The statute clearly provides that, in order to establish its status as an innocent interest holder, GMAC must show by a preponderance of evidence that it "did not know *and* could not reasonably have known of the conduct *or* that it was likely to occur." (Emphasis supplied.) Thus, even if GMAC did not have actual knowledge that the truck was subject to forfeiture, it is not an innocent interest holder unless it also could not reasonably have known that Childrey would use the vehicle in his drug activities or that he was likely to use it for that illegal purpose. GMAC did have actual knowledge that Childrey had used at least one of his other vehicles to transport drugs. Indeed, as the majority concedes on p. 329,

> Agent Neal also advised GMAC that Childrey was using other GMAC-financed vehicles for the transportation and sale of illegal narcotics, and should Childrey be caught again, GMAC would no longer be considered an innocent interest holder with respect to those vehicles.

The majority summarily dismisses this information provided to GMAC as "convey[ing] nothing more than a mere suspicion of future illegal activity." Pp. 330-331. If, however, such a suspicion is sufficient to show that GMAC reasonably could have known that Childrey was likely to use the Silverado to transport and sell drugs, then GMAC cannot be an innocent interest holder under the plain terms of OCGA § 16-13-49 (e) (1) (A). In that regard, "knowledge that an individual has used one vehicle to transport contraband is sufficient to give . . . notice that the individual is likely to use other vehicles to transport contraband. *State of Ga. v. Tucker*, [242 Ga. App. 3 (528 SE2d 523) (2000)]." *GMAC v. State of Ga.*, supra at 476 (2). Thus, the evidence certainly does not demand a finding that GMAC was an innocent interest holder, but rather authorizes the contrary finding that GMAC chose to remain willfully ignorant that Childrey was likely to use the Silverado to transport contraband. "The trial court had

grounds for finding that [GMAC's] superficial actions were inadequate to investigate the matter and to prevent the illicit use of the vehicle." *GMAC v. State of Ga.*, supra at 476 (2).

In her concurrence, Presiding Justice Sears refers to "the unfairness of the State's position in this case." However, the unfairness which she perceives does not exist. When Agent Neal initially contacted GMAC, he stated that the Silverado was not subject to forfeiture *at that time* because there was insufficient evidence that the vehicle was then "directly or indirectly, used or intended for use in any manner to facilitate a [controlled substance] violation." OCGA § 16-13-49 (d) (3). It is undisputed, however, that Childrey eventually did use the Silverado in the commission of a drug offense. The relevant question in this appeal is whether the evidence demands a finding that GMAC "did not know" of this *subsequent* conduct on his part "and could not reasonably have known of [it] or that it was likely to occur." OCGA § 16-13-49 (e) (1) (A). With regard to whether it was reasonable for GMAC to have known of the likelihood that Childrey would use the Silverado in a drug violation, the State of Georgia does not rely upon Agent Neal's initial statement that there was insufficient evidence to authorize a forfeiture of that vehicle at that time. Instead, it relies upon GMAC's actual knowledge that Childrey had in fact used at least one of his *other* automobiles in connection with a drug violation. As noted, that actual knowledge was sufficient to authorize the trial court to find that GMAC had not established by a preponderance of the evidence that it could not reasonably have known of the likelihood that Childrey would use any remaining unforfeited automobile, such as the Silverado, to commit another drug offense. *State of Ga. v. Tucker*, supra. There is simply no inequity evidenced by the trial court's determination, as the finder of fact, that GMAC had failed to prove its innocent interest holder defense by a preponderance of the evidence. As observed by the Court of Appeals,

> GMAC determined that it had sufficient grounds to repossess all the GMAC-financed vehicles, including the Silverado truck, on the basis that Childrey *was exposing* the vehicles to misuse, seizure, or confiscation. But GMAC made a business decision to hold off executing the repossession until all the vehicles were parked simultaneously at Childrey's residence, apparently so that a repossession could take place in one convenient fell swoop. The trial court had grounds to find that this business decision of convenience was unreasonable, since one or all of the vehicles could continue to be used to transport drugs *in the meantime*. (Emphasis supplied.)

*GMAC v. State of Ga.*, supra at 476-477 (2).

This Court has consistently recognized in the past that " '[w]e are neither authorized nor inclined to substitute our judgment on the evidence for the judgment of the trial court unless the record discloses absolutely no evidence in support of the finding by the trial court. . . . [Cits.]' [Cit.]" *Wilkins v. Wilkins*, 234 Ga. 404, 405 (216 SE2d 302) (1975). Here, the Court of Appeals properly adhered to this principle by applying the any evidence standard and affirming the trial court's finding that GMAC did not prove by a preponderance of the evidence that it was an innocent interest holder. Today, however, this Court departs from our long-standing precedent, concluding that it is both authorized and inclined to make its own factual determinations on appeal notwithstanding the sufficiency of the evidence to support the findings reached by the trial court. The Court of Appeals was correct, and we should affirm its judgment.

DECIDED MAY 23, 2005.

*Sutherland, Asbill & Brennan, William D. Barwick, Thomas M. Byrne, Valerie S. Sanders*, for appellant.

*William T. McBroom, District Attorney, Thurbert E. Baker, Attorney General, Andrew T. Jones, Gary D. Bergman*, for appellee.